UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANIEL JOSEPH BLANK,           CIVIL ACTION No. 3:16-cv-00366
         Petitioner

    v.                           JUDGE BRIAN A. JACKSON
                             MAGISTRATE RICHARD BOURGEOIS

DARREL VANNOY, Warden,
      Louisiana State Penitentiary,
       Angola, Louisiana,
        Respondent

## MEMORANDUM IN SUPPORT OF
## MOTION TO CONDUCT HABEAS RULE 6 DISCOVERY

COMES NOW Petitioner DANIEL BLANK, through counsel, who files this Memorandum in support of his motion to conduct discovery in this habeas case. In support thereof, Mr. Blank states as follows:

Over the last 20 years since he was arrested and charged with multiple murders, Mr. Blank has consistently maintained his innocence. As set forth below, there is substantial reason to believe that the Federal Bureau of Investigation (FBI) possesses the DNA profiles of the true perpetrators in the murders of which Mr. Blank was accused, but Mr. Blank has never been given that exculpatory information, and trial counsel did not affirmatively seek this information. To the extent that state post-conviction counsel pursued this information from the FBI through Freedom of Information Act (FOIA) requests, they failed to specifically request the DNA profiles and raw data. In habeas, specific requests for this information to both the FBI and the District Attorney's Office

1

have been made to no avail, so Mr. Blank now asks that this Court permit him to conduct discovery under Habeas Rule 6.

Mr. Blank by this motion specifically requests that this Court issue a *subpoena duces tecum* to the FBI for (1) the DNA profile, and the raw data underlying said profile, generated from male DNA found in a mixture of DNA on the murder weapon in the murder of **Victor Rossi**, DNA **which did not match Mr. Rossi or Mr. Blank**;[1] (2) the male DNA profile, and the raw data underlying said profile, generated from a mixture of DNA found under the fingernails of **Salvador "Sam" Arcuri**, DNA **which did not match Mr. Arcuri or Mr. Blank**;[2] and (3) the raw data underlying the male and female DNA profiles generated from DNA found on cigarette butts located at the scene of the Joyce and Leonce **Millet** attempted murders, **which did not match either of the Millets or Mr. Blank**.[3]

## BACKGROUND

On September 2, 1999, Daniel Blank was convicted of first degree murder in the death of Lillian Philippe and sentenced to death. At Mr. Blank's capital trial, the prosecution presented evidence of five other unadjudicated murders (decedents Victor Rossi, Barbara Bourgeois, Salvador and Louella Arcuri, Joan Brock) and two attempted murders (Joyce and Leonce Millet). In connection with the investigations of each of these offenses, law enforcement agencies, including the Ascension Parish Sheriff's Office, the St. James Parish Sheriff's Office, the St. John the Baptist Parish Sheriff's Office, the Gonzales Police Department, and the Louisiana State Police collected over 900 pieces of

---

[1] Identified as specimen Q5 in FBI Laboratory No. 980921048 S HE GX. *See* TR. 1785.

[2] Identified as specimen Q159.1 in FBI Laboratory No. 980921051 S HE GX and 70821030 S HE GX  *See* TR. 1744.

[3] Identified as specimens Q8-Q16 in FBI Laboratory No. 980921053 S HE GX and 70924019 S HE GX.  *See* TR. 1704-1705.

evidence. Much of that evidence was submitted to other agencies, including the Louisiana
State Police Crime Lab, the Acadiana Crime Lab, and the Federal Bureau of Investigations,
for DNA and fingerprint testing and analysis. The FBI obtained profiles from DNA found
on the physical evidence, but none of the extracted DNA matched Mr. Blank. Likewise,
well over 300 fingerprints were recovered from the crime scenes and many were tested by
the Louisiana State Police Crime Lab, but none of them matched Mr. Blank.[4] Because none
of the DNA or fingerprints left at any of the six crime scenes was matched to Mr. Blank,
the prosecution's case and the jury's verdict were based entirely on Mr. Blank's confession
to the crimes during the course of a high-pressure 12-hour interrogation.[5]

On May 3, 2017, following the conclusion of state post-conviction proceedings,
Mr. Blank filed a *Petition for Habeas Corpus Relief* pursuant to 28 U.S.C. § 2254 in which
he raised substantial allegations of violations of his constitutional rights at his state criminal
trial.  In addition, he presented abundant evidence establishing that a number of other
individuals were viable suspects in the murders of which Mr. Blank was accused, but their
DNA profiles were never compared to the DNA at the crime scenes. Doc. 12 at 416-30.
Before filing that petition, habeas counsel sought to conduct independent testing of a
number of pieces of evidence, including the alleged murder weapons used in the offenses,
based in large measure on information connecting other individuals to the crimes. As is the
practice in cases like this, undersigned counsel initially sought the consent and assistance

---

[4] The instant motion and memo addresses only the undisclosed exculpatory DNA profiles and raw
data. Counsel is simultaneously filing a motion seeking the transfer of the three pieces of evidence
identified in the instant pleading to his DNA expert as well as a motion seeking the transfer of the
fingerprint evidence to his print expert.

[5] A detailed explanation of the circumstances surrounding Mr. Blank's false confession can be
found in his habeas petition, filed with this court. Doc. 12.

of the Assistant District Attorney to secure the transfer of a limited number of key pieces of evidence to an independent laboratory for testing. *See* Doc. 15-4 at 31. In response to counsel's request, however, Assistant District Attorney Charles Long wrote that he would "not consent to any forensic testing of any evidence in this matter." Doc. 15-4 at 35. Accordingly, as one of his requests for relief from this Court, Mr. Blank requested the opportunity to conduct independent forensic testing of evidence that could exonerate him once and for all. Doc. 12 at 416-30.[6]

In addition, while conducting a thorough review of Mr. Blank's case, habeas counsel discovered that the record establishes that the FBI already possesses specific DNA profiles and raw data taken from significant pieces of evidence that do not match Mr. Blank but that can be used to compare to other potential suspects.  Accordingly, Mr. Blank by this motion requests that this Court allow him access to the profiles and raw data generated by the FBI from these items in order to assess whether they are suitable for comparison with each other or with other known profiles without additional testing. Again, neither trial counsel nor state post-conviction counsel specifically requested this information. Not only would independent DNA testing aid in ascertaining the identity of the real perpetrator(s) in these murders, but access to the DNA profiles and raw data generated by the FBI would aid in an expert assessment of the evidence, as it may have degraded over time. Mr. Blank makes this request pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

---

[6] As noted in Mr. Blank's petition and in his motion to transfer evidence for testing, neither trial counsel nor state post-conviction counsel performed this critical testing, and Mr. Blank is simultaneously seeking to present this evidence pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Schlup v. Delo*, 513 U.S. 298 (1995).  Doc. 12 at 246-47.

## LEGAL STANDARD

Rule 6 of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure." This "good cause" standard "is meant to be consistent with *Harris v. Nelson*, 394 US 286 (1969)," which held that courts must "provide necessary facilities and procedures for adequate inquiry" via discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (internal quotation marks and ellipses omitted). As set forth below, Mr. Blank is entitled to discovery of this information because there is more than "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."

Should the facts, when fully developed, reveal the true identity of the perpetrator in any one of the crimes of which Mr. Blank has been accused, thereby establishing that Mr. Blank is actually innocent, then Mr. Blank will most assuredly be entitled to relief. Having established his innocence, Mr. Blank would possess a meritorious claim of ineffective assistance of counsel for failing to seek this exculpatory evidence and have it assessed by an independent DNA expert. Moreover, any procedural default by state post-conviction counsel in failing to pursue and analyze this evidence should be excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), in which the United States Supreme Court held that a habeas court may review a claim of ineffective assistance of counsel despite a default of the claim by post-conviction counsel where post-conviction counsel was ineffective. In addition, where new evidence demonstrates actual innocence, especially in a capital case,

5

any procedural default should be excused. *See Schlup v. Delo*, 513 U.S. 298 (1995) ("The quintessential miscarriage of justice is the execution of a person who is entirely innocent.").

### ARGUMENT

#### Forensic Evidence Testing by the FBI Laboratory Excluded Daniel Blank And Connected An Unknown Male to the Crime Scenes

Of the voluminous amount of forensic evidence collected, testing results indicated that not a single piece of DNA, hair, or textile evidence connected Mr. Blank to any of the crime scenes. Because they were so consistent and so far-reaching, the results of that testing are worth repeating here:

Lillian Philippe Crime Scene

None of the forensic evidence from the Philippe crime scene tested by the FBI matched Daniel Blank. DNA testing done on blood samples from Lillian Philippe's clothing found at the crime scene revealed no DNA other than Ms. Philippe's. TR. 1714, 1715. Of the hair samples taken from Ms. Philippe's clothing at the crime scene, all but one of the samples were consistent with Philippe's own hair. TR. 1716. The other hair was a "brown Caucasian head hair" that the FBI Laboratory found to be "microscopically dissimilar" to Mr. Blank's head hair. TR. 1706.

Victor Rossi Crime Scene

The FBI Laboratory tested multiple items from the Rossi crime scene, including the murder weapon, a baseball bat. TR. 1771, 1784. **The blood on the baseball bat indicated the presence of DNA from more than one male individual.** TR. 1785. Although unable to obtain conclusive matching results because of the DNA mixture, Rossi could not be excluded as a "potential major contributor" to the DNA mixture. TR. 1785.

6

**Mr. Blank, however, was excluded as the other potential contributor to the DNA mixture found on the murder weapon.** TR. 1785. *See* Exhibit 1.  Nor was Mr. Blank's DNA found on any of the other items tested. The FBI also identified blood from a towel, pillowcase, shirt, and knife collected from the Rossi crime scene.  TR. 1771, 1784. Testing revealed that the DNA from the towel and the pillowcase possibly originated from a common source, and that the DNA on the towel was consistent with Rossi. TR. 1784. DNA extracted from a serology sample from the knife was also consistent with Rossi. TR. 1785. Finally, testing confirmed that no head hairs microscopically similar to Mr. Blank's head hairs were found on either Rossi's towel or Rossi's shirt. TR. 1783.

<u>Salvador and Louella Arcuri Crime Scene</u>

The FBI Laboratory received 196 serology, hair, fiber, and fingerprint specimens collected from the Arcuri crime scene for forensic testing. TR. 1689, 1690. None of the items tested matched Mr. Blank. TR. 1746, TR. 1693.  Significantly, however, **the lab determined that the DNA sample taken from under Mr. Arcuri's fingernails contained DNA from more than one individual.** TR. 1693. Results indicated that the DNA was of male origin, that Mr. Arcuri was included as a potential major contributor, that Mrs. Arcuri could not be excluded as a potential secondary contributor, and, most importantly, that **Mr. Blank was excluded as a potential contributor to the mixture of DNA.** TR. 1693. *See* Exhibit 2.

<u>Leonce and Joyce Millet Crime Scene</u>

Crime scene investigators at the Millet residence collected 21 specimens that were sent to the FBI Laboratory for testing, including a pillow and pillowcase, hair, two stones, nine cigarette butts, and five matches.  TR. 1701.  Mr. Blank's DNA was not matched to

any of the specimens from the Millet crime scene. TR. 1704. The FBI Laboratory identified blood on two stones and a pillowcase, the DNA from which matched Leonce Millet. TR. 1703-04. Crucially, however, DNA testing revealed male DNA on five of the cigarette butts and female DNA on three of the cigarette butts tested. **The Millets and Mr. Blank were all excluded as contributors of the DNA found on the cigarette butts.** TR. 1704. *See* Exhibit 3.

<u>Joan Brock Crime Scene</u>

Crime scene investigators collected 77 specimens from the Brock crime scene which were sent to the FBI Laboratory for testing. TR. 1696, 1697. The specimens included fingernail scrapings, fingernail clippings, serology evidence, gloves, debris, hair and fiber samples, and Ms. Brock's shorts and shirt. TR. 1696, 1697. From the 77 specimens, DNA profile results were reported for seven of the specimens, none of which matched Mr. Blank. TR. 1749.

Of 55 Brock crime scene specimens examined for head hair, there were no hairs on or in the specimens which microscopically matched Mr. Blank. TR. 1751. The crime lab also discovered textile fibers of various types and colors in seventeen different specimens from the crime scene, including in the fingernail scrapings, on gloves, and on the victim's clothing. TR. 1751. These were tested against carpet fibers taken from Mr. Blank's home and automobile and the FBI Laboratory concluded that none of those fiber samples was "microscopically like" those discovered at the crime scene. TR. 1751. The FBI Laboratory also determined that "no apparent textile fiber transfers were detected between [the Brock crime scene specimens] and the items from the suspect [fiber samples from Mr. Blank's clothing and automobile]." TR. 1751.

<u>Barbara Bourgeois Crime Scene</u>

Crime scene investigators sent 14 items collected from the Bourgeois crime scene to the FBI Laboratory for testing.  TR. 1736. None of the tested items matched Daniel Blank. TR. 1738-1739. Of the head hair samples taken from the debris on the window sill in the utility room (the alleged point of entry) and from vacuuming at the crime scene, none were microscopically similar to that of Mr. Blank.  TR. 1688.

***

As demonstrated by this description of the FBI's forensic testing and analysis in this case, extensive efforts to connect Mr. Blank's DNA, hair, and fibers to evidence collected at the six crime scenes failed to provide any substantiation for Mr. Blank's purported confession. That testing did, however, result in the generation of several unknown DNA profiles on significant pieces of evidence, including the baseball bat used to murder Victor Rossi, fingernail scrapings taken from Salvador Arcuri, and cigarette butts left at the Millet crime scene. Mr. Blank now seeks this Court's assistance in providing access to that information so that Mr. Blank may provide it to an independent DNA laboratory for evaluation, consultation, and consideration for comparison to the profiles of other known suspects, entry of eligible profiles into the Combined DNA Index System (CODIS) database, or submission to another suitable DNA profile repository in order to establish Mr. Blank's innocence in the murders of which he has been accused. The record makes clear that the FBI possesses this information, as each of the FBI lab reports indicates that the **"results will be maintained by the FBI Laboratory for future comparisons if requested by the submitting agency."** TR. 1699, 1705, 1715, 1738, 1745, 1785. Mr. Blank wishes to perform such a comparison.

9

## None of Mr. Blank's Efforts to Obtain Complete Information About
## The FBI's Forensic Testing Have Been Successful

Mr. Blank has sought information about the FBI's exculpatory testing for the past 16 years since his case became final. On February 23, 2003, Mr. Blank *pro se* sent a Freedom of Information Act (FOIA) request to the FBI requesting its file on him and his prosecution.[7] That request garnered approximately 312 pages in response, but it did not include the exculpatory DNA profiles and raw data generated by the FBI from forensic testing described in this motion. In state post-conviction, counsel for Mr. Blank again made multiple FOIA requests to the FBI, requesting information on Mr. Blank as well as each of the individual crimes of which Mr. Blank had been accused. In response to post-conviction counsel's December 17, 2010, request for information on Mr. Blank,[8] the FBI released approximately 459 pages of materials, but it withheld others. Accordingly, post-conviction counsel filed an appeal and was given approximately 24 more pages of records. Post-conviction counsel's November 11, 2011, requests regarding each of the separate case investigations resulted in approximately 654 pages of documents.[9] Still, none of these responses included the exculpatory profiles or raw data generated from the FBI's forensic testing in the investigations of the multiple murders, and it was not specifically requested by post-conviction counsel.

In addition, in November 2012, state post-conviction counsel filed a writ of mandamus in state court to compel Assistant District Attorney Chuck Long to produce the

---

[7] FOIPA #0958146-001.

[8] FOIPA #115616-000.

[9] Salvador Arcuri (FBI FOIPA Request #1177362), Louella Arcuri (FBI FOIPA Request # 1177361), Joan Brock (FBI FOIPA Request #1177359), Victor Rossi (FBI FOIPA Request #1177363), Barbara Bourgeois (FBI FOIPA Request #1177353), Lillian Philippe (FBI FOIPA Request #1177360).

entire, unredacted FBI file. The writ was granted, and Long produced a copy of the FBI file in July 2015, but the file still did not contain the exculpatory DNA profiles and raw data sought by Mr. Blank, and post-conviction counsel did not specifically request this information.[10]

Most recently, in 2018, following the filing of Mr. Blank's habeas petition, a FOIA request was submitted to the FBI seeking information solely about the murder of Victor Rossi.[11] This particular FOIA request was submitted by Victor Rossi's children, Emily and Melanie Rossi, who have been working in conjunction with Mr. Blank's habeas attorneys to identify their father's real killer. As set forth in Mr. Blank's habeas petition, at the time their father was killed, Emily and Melanie Rossi were immediately alerted that their father had likely been killed by a man named Millard Terry, but they were unable to obtain the cooperation and assistance of the Ascension Parish Sheriff's Office in investigating Terry as well as their father's purported girlfriend at the time, Judy Recile.  Judy Recile's son was married to Ascension Parish Sheriff Jeff Wiley's daughter. The FBI and Louisiana State Police Task Force took over a substantial portion of the Rossi investigation because of allegations that Sheriff Wiley had a conflict of interest in the case and was concealing

---

[10] The file produced by the State in response to the post-conviction court's writ of mandamus was substantially illegible due to poor copying. As a result, post-conviction counsel contacted FBI Special Agent Kyle Hanrahan at the New Orleans FBI office directly in pursuit of a legible file. At an October 26, 2015 meeting between post-conviction counsel and SA Hanrahan, SA Hanrahan stated that ADA Long opposed the FBI providing the entire, unredacted file to post-conviction counsel in compliance with the writ of mandamus granted by the state post-conviction court. On October 29, 2015, SA Hanrahan left a message for post-conviction counsel stating that he was "disturbed" that the copy of the FBI file provided by ADA Long was poor to the point of being illegible, because the copy he gave to ADA Long was in normal readable condition. SA Hanrahan also indicated that ADA Long had only requested a copy of the New Orleans field office file and had not requested a copy of the Texas field offices or FBI headquarters file. Ultimately, neither ADA Long nor the FBI provided post-conviction counsel with an unredacted copy of the complete FBI files on this case.

[11] FOIPA #1396261-000.

his knowledge that someone other than Mr. Blank was responsible for the murder.[12] Doc. 13-1 at 215. In response to their recent FOIA request, the Rossi family received a response of approximately 676 pages from the FBI that did not include the DNA profile obtained from the bat that killed their father *despite specifically requesting it*. Significantly, the response received by the Rossis was considerably longer than the response received by Mr. Blank or his post-conviction counsel, indicating that the FBI had not disclosed the entire file in response to Mr. Blank's prior requests.

The Rossi family, through their attorney Jim Boren, also recently requested access to the forensic evidence for testing and/or the raw data profile from the District Attorney's Office and was also denied.

### Good Cause Exists to Order the FBI to Disclose the DNA Profiles and Raw Data In This Case

Mr. Blank has repeatedly sought access to the exculpatory evidence and/or results for 20 years in order to prove his innocence, and, having been unable to obtain access to this information by other means, he now seeks this Court's assistance in obtaining this critical exculpatory information. Despite the obvious relevance and materiality of the information that Mr. Blank has reason to believe exists in the FBI's file, the FBI has failed

---

[12] In fact, the Rossi family was so suspicious of local law enforcement's handling of their father's case that they hired their own investigator and began recording the interviews they had with the Sheriff's Office and the District Attorney's Office. In those recently-obtained recordings, the Rossi family members were told by law enforcement officials that Millard Terry's prints *probably* were on the bat that killed their father:

> Because Miller Terry worked for him, would have been there several times, and could have had prints all over the bat. That's how hard this case is. That's still not enough. And you're right, the system protects the guilty more than it protects the innocent. And that's something us as police officers gotta fight everyday, and get humiliated and frustrated with it—

6/5/1997 Recording of Rossi Meeting with the Ascension Parish Sheriff's Office.

to produce it in response to numerous FOIA requests, and the District Attorney's Office has been unwilling to cooperate with Mr. Blank or Victor Rossi's family. As such, Mr. Blank's only remaining remedy lies in a subpoena issued by this Court under Federal Rule of Civil Procedure 45(a)(1)(D) commanding the FBI to produce the undisclosed DNA profiles and raw data in its files. Rule 6 of the Rules Governing Section 2254 Cases explicitly countenances use of the Federal Rules of Civil Procedure for discovery in a habeas proceeding, and the above demonstrates that Mr. Blank has shown the "good cause" necessary to invoke Rule 6's provisions.

That the subpoena will be directed to the FBI does not, at least at this juncture, implicate any special standards or procedures.[13] "In federal court, the federal government has waived its sovereign immunity, *see* 5 U.S.C. § 702, and neither the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court." *Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998). Indeed, Louisiana habeas courts have ordered the FBI to produce documents as part of discovery in a habeas proceeding in other cases. In *United States v. Palazzo*, No. 05-266, 2012 WL 3546922 (E.D. La. Aug. 16, 2012), for instance, Judge Lemmon ordered the FBI

---

[13] Should the Court permit the issuance of the requested subpoena, counsel for Mr. Blank will have to follow special procedures to execute the subpoena. *See generally United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Those special procedures will provide the FBI with an opportunity in an administrative proceeding to make any case it may have for withholding parts of the file. Significantly, Fifth Circuit precedent holds that any law enforcement privilege the FBI might assert "lapses either at the close of an investigation"— which in this case occurred over two decades ago—"or at a reasonable time thereafter"—which has surely long since run. *In re United States Dep't of Homeland Sec.*, 459 F.3d 565, 571 (5th Cir. 2006).

If, but only if, the FBI continues to withhold material and prevails in the administrative proceeding would Mr. Blank return to this Court to seek a motion to compel. The special standards applicable to a motion to compel production from an Executive Branch agency asserting privilege can be more fully fleshed out in any future proceeding that might be necessary. Mr. Blank notes at this point only that he would have strong arguments in favor of releasing considerably more of his file than the FBI has been willing to until now.

to produce its file for an *in camera* inspection as part of the discovery she permitted in a

habeas proceeding under 28 U.S.C. § 2255.[14] Likewise, in the 2254 case of *Ortiz v. Cain*,

No. 12-2310, Judge Triche Milazzo ordered the FBI to produce its file for an *in camera*

review for *Brady* materials. In the present case, because Mr. Blank is seeking a narrow set

of scientific data from the FBI and not making a blanket request for its entire file, and

because the profiles and raw data have already been determined to be exculpatory as Mr.

Blank was excluded as the source of the DNA, an *in camera* review by this Court should

not even be necessary.

## CONCLUSION

Mr. Blank has shown with specific allegations that there is ample reason to believe

that he may, if the facts are fully developed, be able to demonstrate that he is entitled to

relief. The FBI is in possession of significant exculpatory information, *i.e.*, DNA profiles

that do not match Mr. Blank, and trial counsel never sought this information and provided

it to an independent DNA expert even though doing so could have finally established Mr.

Blank's innocence. This Court should exercise its power under Rule 6 of the Rules

Governing Section 2254 Cases and Rule 45 of the Federal Rules of Civil Procedure to

remedy this injustice in a death case.

FOR THE FOREGOING REASONS, Mr. Blank respectfully requests that this

Court grant his request to conduct discovery pursuant to Habeas Rule 6 and issue a

---

[14] "Because Rule 6 of the Rules Governing § 2254 Cases is nearly identical to Rule 6 of the Rules Governing § 2255 Cases, and both use the same 'good cause' standard, courts have looked to cases interpreting the former when applying the latter." *United States v. Fields*, 761 F.3d 443, 478 n.18 (5th Cir. 2014). The only difference is that, because the United States is already a party to a Section 2255 proceeding, there is no need to go through the formalities of a subpoena and the *Touhy* process, which applies only when the United States is not already a party. *Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992); *Alexander*, 186 F.R.D. at 70.

subpoena to the FBI for the profiles and raw data generated in connection with the instant

prosecution.

Respectfully submitted,

/s/ *Letty S. Di Giulio*

_____

Letty S. Di Giulio, Bar No. 29836
K&B Plaza
1055 St. Charles Avenue, Suite 208
New Orleans, LA 70118
(504) 572-0194
letty@lettydigiulio.com

*/s/ Rebecca L. Hudsmith*

_____

Rebecca L. Hudsmith, Bar No. 7052
FEDERAL PUBLIC DEFENDER
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
Rebecca_Hudsmith@fd.org

/s/ *Lisa A. Bakale-Wise*

_____

Lisa A. Bakale-Wise, Bar No. 34239
Attorney at Law
P.O. Box 494
Hillsborough, NC 27278
(919) 391-4421
bakalewise.law@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on Charles S. Long, Assistant District Attorney, 23rd Judicial District Court, P.O. Drawer 750, 316 Chetimatches St., Donaldsonville, Louisiana, 70346, by U.S. mail with sufficient first class postage attached, on this 7th day of October, 2019.

/s/ *Letty S. Di Giulio*

Letty S. Di Giulio, Bar No. 29836