# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

DANIEL JOSEPH BLANK

                                                    CIVIL ACTION

VERSUS

                                                    NO. 16-366-BAJ-RLB

DARREL VANNOY

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition asserts twenty-eight claims for relief,[1] challenging his first degree murder conviction and death penalty sentence entered in the Twenty Third Judicial District Court for the Parish of Ascension after a trial by jury concluded with a vote to impose the death penalty on September 4, 1999. On November 7, 2019,[2] the respondent filed an answer asserting procedural objections to the petitioner's claims and submitted a brief on January 9,

---

[1] (1) the petitioner's confession was involuntary; (2) the petitioner was denied due process because he was unable to introduce the entire confession video into evidence; (3) the petitioner was denied due process through the introduction of evidence of "other crimes;" (4) the petitioner's trial counsel was ineffective for failing to properly litigate the "other crimes" evidence, (5) the petitioner received ineffective assistance of counsel during the guilt phase of his trial because trial counsel failed to properly challenge the reliability of his confession and the "other crimes" evidence; (6) the petitioner's trial counsel was ineffective for failing to investigate and present to the jury evidence of police failures and misconduct in the investigation of the Victor Rossi murder; (7) the petitioner received ineffective assistance of counsel because his trial counsel failed to present adequate mitigation evidence during the penalty phase; (8) the state presented false and misleading testimony in violation of *Napue v. Illinois*; (9) the state failed to produce exculpatory material in violation of *Brady v. Maryland*; (10) the trial judge abused his discretion in denying the petitioner's motion to continue the trial to allow the defense to conduct forensic testing; (11) the trial court's rulings in voir dire impermissibly skewed the jury toward the death penalty; (12) the petitioner received ineffective assistance of counsel because trial counsel failed to exercise peremptory challenges on jurors who would automatically vote for death; (13) juror misconduct denied the petitioner due process; (14) instructional error; (15) prosecutorial commentary on the petitioner's right to remain silent violated his Fifth Amendment rights; (16) the trial court erred in denying his second and third motions for change of venue; (17) introduction of gruesome photographs denied the petitioner a fair trial and reliable sentencing; (18) the state introduced impermissible hearsay evidence; (19) the state's improper commentary on the governor's commutation power violated the petitioner's Eighth Amendment rights; (20) the trial court violated the presumption of innocence by reading the indictment without a limiting instruction; (21) penalty phase errors; (22) the indictment was constitutionally defective; (23) Louisiana's death penalty statute is unconstitutional; (24) trial counsel were ineffective for failing to quash the bill of information because the grand jury foreperson was selected in a discriminatory manner; (25) cumulative error; (26) incomplete record; (27) the petitioner's conviction and sentence violation international human rights law; (28) the execution of a brain damaged, mentally ill person violates the Eighth Amendment. (R. Doc. 12).

[2] R. Doc. 30.

2020 arguing the grounds of the procedural objections.[3] On July 20, 2020, the Court held a status

conference with the parties to discuss a Case Management Order.[4] On July 21, 2020, the Court

issued the Case Management Order in which the parties were advised that the Court would issue

an Order ruling upon the procedural objections before addressing the merits of the petitioner's

claims.[5] The petitioner subsequently filed a brief replying to the respondent's procedural

objections.[6] Accordingly, the Court herein addresses the procedural objections raised by

respondent.[7]

## Relevant Procedural History

Petitioner was indicted on December 11, 1997 in the Twenty Third Judicial District for

the Parish of Ascension, State of Louisiana for the first degree murder of Lillian Phillipe.[8] On

August 14, 1998, the state filed notice that it intended to seek the death penalty.[9]  The trial judge

granted the petitioner's first request for a change of venue and the trial was moved to the federal

courthouse in Houma, Louisiana.[10] The petitioner's trial was originally set to commence on

March 2, 1999. The petitioner's trial counsel filed a motion to continue the trial on the grounds

that the results from the FBI crime laboratory forensic testing were not yet available to the

---

[3] R. Doc. 41.
[4] R. Doc. 52.
[5] R. Doc. 54.
[6] R. Doc. 73.
[7] The Court placed the parties on notice during the teleconference on July 20, 2020 that it intended to *sua sponte* raise procedural default. The Court, *sua sponte*, raises herein the issue of failure to exhaust Claim 3(D), as that claim was objected to on other grounds by the respondent. R. Doc. 52.  Future orders may include *sua sponte* dismissals of additional claims on the grounds of procedural default. The Court does not address herein the petitioner's objections to Claim 4 and Claim 5, as the objection was made on the basis that the state court ruling was "neither contrary to nor an unreasonable application of clearly established federal law, nor is it a decision based on an unreasonable determination of the facts in light of the evidence presented in State court." R. Doc. 41, pp. 43, 52. Determination of the merits of the petitioner's claims will be handled in future orders.
[8] R. Doc. 59-1, p. 199.
[9] R. Doc. 59-7, p. 124.
[10] R. Doc. 59-8, pp. 33-4; 59-8, pp. 69-72.

defense.[11] On February 10, 1999, the trial judge continued the trial without date.[12] After a motion filed by the prosecution on March 17, 1999, the trial was reset to begin on August 16, 1999.[13]

On May 11, 1999 the petitioner's trial counsel filed a second motion for a continuance on the grounds that the state had not yet produced the results of the FBI laboratory testing or the forensic materials tested by the FBI.[14] A contradictory hearing on the second motion to continue was held on June 10, 1999.[15] At the conclusion of the hearing, the trial judge denied the second motion to continue the trial. On June 24, 1999, the petitioner's trial counsel sought review of the trial court's denial of the motion for a continuance with the Louisiana First Circuit Court of Appeal ("First Circuit").[16] The First Circuit denied the writ on July 19, 1999.[17] The petitioner sought further review with the Louisiana Supreme Court, which was denied on August 5, 1999.[18]

On July 19, 1999 the prosecution filed a notice of intent to use "other crimes" evidence at trial, including the murders of Victor Rossi, Barbara Bourgeois, Samuel Arcuri, Luella Arcuri, and Joan Brock; and the attempted murders of Leonce and Joyce Millet.[19] The motion was granted on August 12, 1999.[20] The trial commenced on August 16, 1999. Jury selection concluded on August 25, 1999.[21] The guilt phase of the trial lasted from August 26, 1999-September 2, 1999.[22] On September 2, 1999, the jury rendered a unanimous verdict of guilty of

---

[11] R. Doc. 59-8, pp. 73-75.
[12] R. Doc. 59-8, p. 82.
[13] R. Doc. 59-8, p. 83.
[14] R. Doc. 59-8, pp. 106-108.
[15] R. Doc. 60-4, pp. 28-62.
[16] R. Doc. 59-8, pp. 115-116.
[17] R. Doc. 59-8, p. 242.
[18] R. Doc. 59-8, p. 252.
[19] R. Doc. 59-8, pp. 125-127. The prosecution filed a motion to present the unadjudicated crimes during the penalty phase sometime in 1998. The state court record does not contain the motion, but the hearing on the state's motion commenced on December 3, 1998. R. Doc. 59-10, pp. 82-115. The August 12, 1999 motion sought authority to present the same crimes during the guilt phase of the trial.
[20] R. Doc. 59-9, pp. 15-22.
[21] R. Doc. 60-4, pp. 74 through R. Doc. 61-3, pp. 73.
[22] R. Doc. 61-3, pp. 97 through R. Doc. 61-8, pp. 144.

first degree murder.[23] The penalty phase of the trial occurred on September 3-4, 1999.[24] At the conclusion of the penalty phase, the jury voted to impose the death penalty on the grounds that the murder occurred during the commission of an aggravated burglary and the victim was over the age of 65.[25]

The petitioner filed a direct appeal with the Louisiana Supreme Court.[26] The Louisiana Supreme Court issued an opinion on April 11, 2007 affirming the petitioner's conviction and sentence. *State v. Blank*, 2004-0204 (La. 4/11/2007), 955 So.2d 90.[27] The petitioner subsequently filed a petition for writ of certiorari with the United States Supreme Court,[28] which was denied on October 29, 2007. *State v. Blank*, 552 U.S. 994 (2007).

The petitioner filed his initial application for post-conviction relief (PCR) with the Twenty Third Judicial District Court for the Parish of Ascension on November 7, 2007.[29] The

---

[23] R. Doc. 59-9, p. 65.

[24] R. Doc. 61-8, pp. 145 through R. Doc. 61-9, pp. 130.

[25] R. Doc. 59-9, p. 88.

[26] R. Doc. 59-5, 125-5 (Motion & Order); 63-8, pp. 228 through R. Doc. 63-9, p. 86 (brief to Louisiana Supreme Court). The Louisiana Supreme Court has original appellate jurisdiction when the defendant has been convicted of a capital offense and a penalty of death actually has been imposed. La. Const. Ann. art. V, § 5.

[27] The petitioner's direct appeal claims: the trial court improperly denied the petitioner's motion to suppress his involuntary statement; the petitioner's due process rights were violated because the jury was allowed to hear evidence of five other capital murders and two attempted murders; the petitioner's due process and confrontation clause rights were violated when he was prohibited from showing the jury the entire confession video and questioning witnesses about the tactics used to secure the confession; rulings in voir dire impermissibly skewed the jury toward the death penalty; the trial judge abused his discretion in denying the petitioner's motion to continue the trial date; trial court erred in denying the petitioner's second and third motions for change of venue; errors in the jury instructions; trial court erred in denying the petitioner's second and third motions for change of venue; the reading of the indictment without a limiting instruction violated the presumption of innocence; prosecutorial commentary harmed presumption of innocence; introduction of autopsy and crime scene photographs violated due process; jury instruction errors; the state violated the petitioner's Eighth Amendment rights by improperly commenting on the governor's commutation power; the state impermissibly introduced hearsay evidence; incomplete record; the indictment was constitutionally defective; penalty phase errors require reversal of the sentence; the denial of the petitioner's motions for leave to file briefs in excess of page limitation deprived the petitioner of his right to appeal, due process and equal protection under the law.  R. Doc. 63-8, pp. 228 through R. Doc. 63-9, pp. 1-86.

[28] R. Doc. 63-10, pp. 87-123.

[29] R. Doc. 62-1, pp. 162-167. The petitioner's initial PCR listed six claims: ineffective assistance of counsel at the guilt phase; penalty phase and during appeal; the state committed *Brady* violations; and DNA evidence will result in exoneration.

petitioner filed a First Supplemental PCR on April 1, 2013[30] and a Fourth Supplemental PCR on May 22, 2013.[31] The state filed procedural objections on June 5, 2013,[32] which were ruled on by the trial court on July 29, 2013.[33] *State v. Blank,* 2013 WL 12408099 (La. Dist. Ct. July 29, 2013). The remaining substantive claims were heard at an evidentiary hearing on July 20-24, 2015.[34] The trial court issued a ruling dismissing the petitioner's PCR claims on September 29, 2015.[35] The petitioner sought review with the Louisiana Supreme Court, which dismissed his claims on May 13, 2016.[36] *State v. Blank*, 2016-0213 (La. 5/13/16), 192 So. 3d 93. The petitioner filed the instant petition for habeas corpus relief on June 7, 2016.[37]

## Factual Background

The facts, as described by the Louisiana Supreme Court, are as follows: On the morning of April 10, 1997, Viola Breaux Philippe was waiting for her sister-in-law, 71–year–old Lillian Philippe, to pick her up at home and drive the two women to catch a bus to a religious retreat in Chatawa, Mississippi. When Lillian had not arrived by 8 a.m. and could not be reached by

---

[30] R. Doc. 62-4, 43-242; R. Doc. 62-8, pp. 202-205. The First Supplemental PCR claimed: factual innocence; unconstitutional to execute someone who is mentally retarded; involuntary confession; ineffective assistance of counsel for failure to properly litigate other crimes evidence; ineffective assistance of counsel during guilt phase; ineffective assistance of counsel for failure to present mitigation evidence; *Brady* violations; the trial judge was biased; ineffective assistance of counsel for failing to quash the bill of information; ineffective assistance of counsel for failing to utilize peremptory challenges on jurors who would automatically impose the death penalty; ineffective assistance of counsel for failing to move for a limiting instruction on the use of other crimes evidence; ineffective assistance of counsel for failing to object to the short form indictment; the trial court erred in allowing introduction of the other crimes evidence; ineffective assistance of counsel with respect to the lack of live trial testimony from the state's pathologist; ineffective assistance of counsel due to counsel eliciting testimony regarding the petitioner's prior record during the penalty phase; conviction and sentence violates international human rights law; Louisiana's lethal injection protocol violates the Eighth Amendment; asserts rights to fair clemency process; the execution of the mentally ill is unconstitutional; cumulative error; the petitioner's rights under international law were violated; and Louisiana's death penalty statute is unconstitutional.

[31] R. Doc. 63-1, pp. 5-120. The Fourth Supplemental PCR added additional argument to the existing claims and asserted a new *Brady* claim and a new claim that the prosecution presented false testimony in violation of *Napue v. Illinois.* The petitioner's Second and Third Supplemental PCRs did not add any new substantive claims.

[32] R. Doc. 63-2, pp. 53-55

[33] R. Doc. 63-2, pp. 81-93.

[34] R. Doc. 63-2, p. 234.

[35] R. Doc. 63-4, pp. 66-73.

[36] R. Doc. 63-4, pp. 208-231.

[37] R. Doc. 1.

telephone, Viola called her brother-in-law, Dr. Doyle Philippe, and requested that he check on her.

Dr. Philippe arrived at the victim's house at approximately 8:30 a.m. and found her vehicle in the driveway, the door to the house unlocked, and the alarm system deactivated. Finding the circumstances suspicious, Dr. Philippe walked into the hallway, and after briefly surveying the immediate area, went back outside and called the authorities. Gonzales police officer Dowell Brenn arrived at the scene, and Dr. Phillipe accompanied him into the house where they found the victim on the floor at the foot of her bed, covered in blood. Brenn also observed a broken trophy near the victim's head and a bloody "butcher-type" knife next to the bed.

Officer Brenn exited the house, called for back-up, and secured the crime scene. A visual survey of the outside of the residence revealed a hole on the rooftop where an attic vent had been removed. Brenn also saw that a wrought iron chair had been placed atop an air-conditioning unit on the front porch of the residence, presumably to facilitate access to the roof.

Detective Mike Toney was among the officers who participated in the investigation of the Philippe homicide and testified that the victim's family members and friends were ruled out as viable suspects. In the meantime, officials from the Sheriffs' Offices of Ascension, St. John the Baptist, and St. James Parish joined forces with officers from the Gonzales Police Department and agents from the New Orleans Office of the FBI and formed a task force to investigate the murder as among a series of homicides that occurred during home invasions in the river parishes that they believed were related. The petitioner, Daniel Blank, became implicated as a possible perpetrator of the crimes after an aggravated burglary that occurred at the residence of Leonce and Joyce Millet on July 6, 1997. Following that incident, a composite sketch of the suspect was

composed pursuant to the Millets' recollection of the suspect and released to the media. Both an anonymous informant and Elton Cloutare, a security guard at the Square Deal Casino in Sorrento, Louisiana, identified the petitioner as resembling the individual depicted in the sketch.

On September 25, 1997, Detective Toney proceeded to the petitioner's last known address in Sorrento, where he encountered Dorothy Recher, the mother of the petitioner's girlfriend, Cynthia Bellard. Recher told the officer that the petitioner did not live there anymore but indicated that she would try to get a message to him. The petitioner called the detective at his office approximately 15 minutes later and the officer advised the petitioner that he wanted to question him concerning some murders that had occurred in Ascension Parish. Toney explained that the petitioner's name had come up as a result of an observed change in his spending habits at the casino. The petitioner agreed to come and meet with the officer the following weekend and to bring with him proof of his gambling winnings.

The petitioner apparently returned to Louisiana from his new home in Texas and left documentation concerning his winnings at the casino with Ms. Recher. Detective Toney collected the documents and conducted a background check on the petitioner to determine whether his income could support his gaming activity at various area casinos. Subpoenas issued to local gambling establishments revealed that petitioner had run a total of $269,000 at three casinos, cashing out a total of $220,216, resulting in a net loss of approximately $49,000. Managers at the Treasure Chest Casino indicated that based on the petitioner's wagering history, he had a player profile of a corporate executive with annual earnings of over $200,000. In contrast, Louisiana Department of Labor records revealed that the petitioner had no reported earnings for 1997 and annual earnings of only $13,767 in 1996 and $5,410 in 1995. Department of Motor Vehicles records demonstrated that the petitioner and Bellard had purchased a pick-up

truck, a station wagon, a motorcycle and a utility trailer in 1997. The task force also learned that on July 15, 1997, the petitioner had purchased a mobile home for $22,000 in Onalaska, Texas. The petitioner became the prime suspect in the multiple murders as a result of his unusual spending habits after the commission of the crimes, as well as his past association with three of the victims.

In a subsequent telephone conversation with Detective Toney, the petitioner agreed to travel to Louisiana to meet with the officer on November 10, 1997, but ultimately did not show up as promised. Consequently, Toney, accompanied by other members of the task force, including Officer Brenn, Lieutenant Benny DeLaune, Detective Todd Hymel, and FBI Agent David Sparks, proceeded to Onalaska to interview him, armed with search warrants for his home and business.

The task force encountered the petitioner on November 13, 1997, when they arrived at his place of business, Daniel's Automotive, and he readily agreed to accompany the officers to the Onalaska Courthouse Annex. For the next 12 hours, Detective Toney and other members of the task force questioned the petitioner, first about his spending habits, and later about his participation in the various murders.

After three hours of initial questioning by Detectives Hymel and Toney, during which the petitioner denied any involvement in the murders, the petitioner agreed to submit to a polygraph examination. At that time, FBI Agent Sparks proceeded to interview the petitioner for approximately two-and-one-half hours and conducted the polygraph examination, which related only to the murder of Joan Brock on May 14, 1997, in St. John the Baptist Parish. During this interview, the petitioner continued to deny any involvement in the crimes, although the polygraph suggested that he was being untruthful in his responses to questions about the murder

of Mrs. Brock. After Sparks concluded his interview and the petitioner had taken a bathroom break, Detective Hymel entered the room and, in a long and solemn speech frequently referencing the petitioner's recently deceased mother, calmly appealed to the petitioner to confess. In response, the petitioner became somewhat emotional and slowly began to confess, first to the Brock homicide, and then to each of the other multiple homicides, including the murder of Lillian Philippe. These confessions were very detailed. A video tape of this interrogation and confession, along with a transcript, was introduced into evidence and played for the jury. However, the two-and-one-half hour portion of the interview where the petitioner was questioned by David Sparks and given a polygraph test was edited out and not seen or considered by the jury. The state could not produce any forensic evidence placing him at the various crime scenes, so it relied almost entirely on the confession to prove the petitioner's guilt at trial. Throughout this confession, the jury heard evidence that large amounts of cash were stolen from most of these residences, that the petitioner was gambling large amounts of cash at area casinos in vast excess of his actual income, that the petitioner knew most of the victims, and appeared to have motives in addition to robbery for some of them, and that he knew the specific details of all the crimes. *State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 97–101.

### **Failure to Exhaust (Claims 1(A)(2), 3(D), 6, 23, 27, & 28)**

Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined. The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack. *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980). As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the

petition have been exhausted through the state courts. In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987).

The respondent contends four of the petitioner's claims are unexhausted and procedurally defaulted: Claim 1(A)(2), Claim 6, Claim 23, Claim 27, and Claim 28. The Court *sua sponte* raises failure to exhaust Claim 3(D).

**Claim 1(A)(2)**

In Claim 1(A)(2) the petitioner contends that his intellectual and cognitive deficits vitiated the voluntariness of his confession.[38] The respondent argues that this claim is unexhausted because it was voluntarily withdrawn during the post-conviction proceedings.[39] The respondent is mistaken. Claim 1(A)(2) was presented to the Louisiana Supreme Court during the petitioner's direct appeal,[40] and is therefore exhausted.

**Claim 3(D)**

In Claim 3(D), the petitioner contends that the trial court failed to charge the jury with a limiting instruction regarding the proper use of the "other crimes" evidence, leaving the jurors with inadequate guidance. Specifically, the petitioner contends that the trial court failed to instruct the jury that the "other crimes" evidence was to be considered solely for the purpose of

---

[38] R. Doc. 12, pp. 75-80.
[39] R. Doc. 41, p. 27. The record reflects that the petitioner filed a voluntary motion to dismiss Claim 2 of his original PCR, which was a claim under *Atkins* that it is a violation of the Eighth Amendment to execute a mentally retarded individual. R. Doc. 63-2, pp. 167-169. However, Claim 1(A)(2) of the petitioner's federal habeas petition was brought as a separate claim in his First Supplemental PCR labeled as "Claim 3(C)." R. Doc. 62-4, pp. 69-70. This claim asserts that the petitioner's low intelligence and limited mental capacity rendered his confession involuntary.
[40] R. Doc. 63-9, pp. 18-20; *Blank*, 955 So.2d at 140.

the issues of intent or lack of mistake or accident.[41] The petitioner raised the issue in his direct appeal to the Louisiana Supreme Court, but the petitioner's brief only argues that the jury instruction on "other crimes" evidence violated Louisiana law, citing *State v. Maise*, 00-1158 (La. 1/15/02), 805 So.2d 1152 and *State v. Jackson*, 625 So.2d 146 (La. 1993).[42] The petitioner argues the claim was exhausted. However, in support of this argument the petitioner points to a separate section of his brief to the Louisiana Supreme Court, which argued that the *introduction of the "other crimes" evidence* violated the petitioner's federal constitutional rights.[43] A review of the petitioner's brief to the Louisiana Supreme Court reveals that he did not present a federal law argument with respect to the trial court's failure to give the jury an "other crimes" limiting instruction.

The state courts must be apprised of the constitutional foundation of the claim. *Duncan v. Henry,* 513 U.S. 364, 365–66 (1995) (per curiam). "[I]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam)). Consequently, "'where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement.'" *Id.* (quoting *Vela v. Estelle,* 708 F.2d 954, 958 fn. 5 (5th Cir. 1983)).

The state court, when presented with a claim of error under state law, "understandably confine[s] its analysis to the application of state law.'" *Duncan v. Henry,* 513 U.S. 364, 366 (1995) (per curiam). Thus, because the petitioner failed to brief the federal law issues associated

---

[41] R. Doc. 12, pp. 150-151.
[42] R. Doc. 63-9, p. 37.
[43] R. Doc. 63-9, p. 30.

with Claim 3(D), the Louisiana Supreme Court understandably confined its description of the claim as a state-law only claim.[44] *State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 127 fn. 27 (unpublished appendix).

The petitioner failed to fairly present a federal law claim to the Louisiana Supreme Court, Claim 3(D) is therefore unexhausted. If the petitioner were to attempt to assert Claim 3(D) to the Louisiana Supreme Court a second time, he would be barred by Supreme Court Rule X, § 5. When a petitioner fails to timely and properly present his claims to the Louisiana Supreme Court and is time-barred from seeking further relief in the Louisiana courts because he has allowed his state court remedies to lapse, those claims are "technically exhausted" but nevertheless procedurally defaulted. *Wilder v. Cockrell,* 274 F.3d 255, 262 (5th Cir. 2001), citing *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001); *Magouirk v. Phillips,* 144 F.3d 348, 357 (5th Cir. 1998) citing *Coleman v. Thompson,* 501 U.S. 722 at 731–33, and 735 at fn. 1(1991); *Bledsue v. Johnson,* 188 F.3d 250, 254–55 (5th Cir. 1999) citing *Coleman,* 501 U.S. at 735 n.1 (1991) and *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995); *Fuller v. Johnson,* 158 F.3d 903, 905–06 (5th Cir. 1998). In such a case there is no difference between non-exhaustion and procedural default. *Id.* Claim 3(D) is therefore procedurally defaulted and should be dismissed.[45]

---

[44] Full text of Louisiana Supreme Court's discussion of petitioner's claim regarding the limiting instruction is included in the section of this Report and Recommendation discussing the independent and adequate state ground doctrine, below.

[45] Petitioner is hereby specifically instructed that this Report and Recommendation is notice to him that this Court is *sua sponte* raising the issue of failure to exhaust state court remedies and that petitioner must submit any evidence or argument concerning exhaustion as part of any objections he may file to this Report and Recommendation. *Kurtzemann v. Quarterman,* 306 Fed. App'x 205 (5th Cir. 2009) (district court may sua sponte raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given) (citing *Day v. McDonough,* 547 U.S. 198, 209–10 (2006) (addressing limitations) and *Magouirk v. Phillips,* 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)).

**Claim 6**

In Claim 6 the petitioner alleges that his trial counsel was ineffective for failing to "present to the jury compelling available evidence of police failures and misconduct in the investigation of 'other crimes' murder of Victor Rossi…"[46] Specifically, the petitioner alleges that trial counsel made no effort to investigate "irregular circumstances" surrounding the investigation of the Victor Rossi murder. The petitioner contends that the Ascension Parish Sheriff's Office failed to properly investigate the murder and follow up on critical leads. The petitioner also contends that the Ascension Parish Sheriff's Office failed to properly investigate the murder because Sheriff Jeffrey Wiley had a personal relationship with someone the Rossi family believes may have been involved in the murder.

The petitioner attaches affidavits from Victor Rossi's daughters,[47] ex-wife,[48] sister,[49] and niece.[50] The petitioner contends that the information contained in the Rossi family affidavits should have been investigated by his trial counsel and presented to the jury. He contends that this evidence would have undermined his confession and the prosecution's case and changed the outcome of his trial. Particularly, the petitioner alleges that the jury should have been made aware that the time the petitioner confessed he killed Victor Rossi did not match the coroner's time of death; that law enforcement "rebuffed" the Rossi family member's attempts to provide specific information that indicated someone other than the petitioner killed Victor Rossi; that Sheriff Wiley had a personal relationship with a potential suspect that created a conflict; and that DNA from a third person was found on the murder weapon that did not match the petitioner. The

---

[46] R. Doc. 12, p. 247.
[47] Melanie Rossi (R. Doc. 15-4, pp. 3-10); Emily Rossi (R. Doc. 15-4, pp. 11-14).
[48] Karen Rossi (R. Doc. 15-4, pp. 15-19).
[49] Viola Rossi (R. Doc. 15-4, pp. 20-25).
[50] Kimberly Renee Carden (R. Doc. 15-4, pp. 24-29).

petitioner also alleges that his counsel was ineffective for failing to have the murder weapon (baseball bat) submitted for independent forensic testing to determine whether the third person could be identified.

The petitioner concedes in his petition that Claim 6 is unexhausted and procedurally defaulted.[51] The record also reflects that the petitioner did not allege the substance of Claim 6 in his direct appeal or in his application for post-conviction review. Accordingly, Claim 6 is unexhausted. *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980).

A claim is considered to be "technically exhausted" when state relief is no longer procedurally available in connection with the claim, without regard to whether the claim was actually exhausted by presentation before the state courts. *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991). In such instance, where a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred, then the claim is technically exhausted and procedurally defaulted in the state court. *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997), *See also Magouirk v. Phillips,* 144 F.3d 348 (5th Cir. 1998).

Here, the petitioner would be procedurally barred from attempting to exhaust Claim 6 with the state courts in a second application for post-conviction relief. The state courts would reject the application in reliance on La.C.Cr.P. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states that "[n]o application for post-conviction relief ... shall be considered if it is filed more than two years after the

---

[51] R. Doc. 12, p. 257-246.

judgment of conviction and sentence has become final...." Thus, Claim 6 is procedurally defaulted.

However, the petitioner requests that his procedural default be excused under the exception set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a failure to bring an ineffective assistance of trial counsel during post-conviction proceedings may be excused if: (1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law *requires* that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding. *Id*. The benefit of the *Martinez* exception was extended to Louisiana prisoners by the Fifth Circuit in *Coleman v. Goodwin*, 833 F.3d 537 (5th Cir. 2016).

To be "substantial" and meet the first requirement of the *Martinez* exception to procedural default, the petitioner's underlying ineffective assistance of trial counsel claim must have "some merit." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). Ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, which requires a habeas petitioner to affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. To make this determination, federal habeas courts must weigh the evidence adduced in the habeas proceeding and that adduced at trial against the aggravating evidence. *Busby v. Davis,* 677 F. App'x 884, 892 (5th Cir. 2017), *citing*

16

*Sears v. Upton*, 561 U.S. 945 (2010). Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The petitioner first alleges that his counsel failed to investigate and present to the jury evidence of the Sheriff's personal connection to a potential suspect in Victor Rossi's murder, the theory that the Ascension Parish Sheriff's Department failed to adequately investigate the murder due to the Sheriff's personal relationship with a potential suspect, the Ascension Parish Sheriff Department's failure to follow up on information provided by the victim's family, and other details contained in affidavits signed by Victor Rossi's family members attached to the habeas petition.

The affidavit submitted by Victor Rossi's daughter, Melanie Rossi, alleges that she was with her father's girlfriend, Judy Recile, on October 27, 1996 when she discovered her father's body.[52]  The affidavit attests that she was "lured" to her father's house on October 27, 1996 by Recile. The affidavit describes Recile's behavior on October 27, 1996 as "strange," providing examples,[53] and expresses the opinion that Recile had something to do with her father's murder.[54] Melanie Rossi's affidavit also states that she witnessed Sheriff Jeffrey Wiley arrive at

---

[52] Victor Rossi's daughter, Emily Rossi, also submitted an affidavit (R. Doc. 15-4, pp. 11-14). Emily Rossi's affidavit also states that she believes that the Ascension Parish Sheriff's Office conducted an inadequate investigation due to the Sheriff's connection to Judy Recile and expresses her belief that Daniel Blank should not have received the death penalty. However, the remainder of the affidavit appears to be based on hearsay contained the other attached affidavits.

[53] The examples of "strange" behavior included in the affidavit: Recile asked Melanie Rossi to try to enter the house even though Recile knew the location of the spare key; Recile stated that she had been to the house several times that day looking for Victor Rossi but never used the spare key to enter the house; Recile claimed to have been to the house during the daylight hours and Victor Rossi's body could be plainly seen through the windows; when the body was discovered, Recile immediately accused Miller Terry of murdering Victor Rossi; Recile used a "bag phone" in her car at the crime scene, but had intentionally made a stop earlier in the day to use a pay phone; Recile did not call 911 on her phone at the crime scene, but called someone else. R. Doc. 15-4, pp. 3-10.

[54] R. Doc. 15-4, p. 5.

her father's house after the body was discovered and drive off with Judy Recile. She later learned that Wiley's daughter was dating Recile's son. The affidavit also states that Melanie Rossi testified at trial but was never told by the Ascension Parish District Attorney's Office that a third person's DNA was found on the murder weapon.[55]

Victor Rossi's ex-wife, Karen Rossi, also submitted an affidavit stating that she advised the Sheriff's Department that she found a lottery ticket on the floor near where Victor Rossi's body was found. The lottery ticket was dated the day before the murder and contained a footprint. Karen Rossi's affidavit attests that by the time the Sheriff's Department went to the store to attempt to retrieve the surveillance footage of the purchase it was too late because the tape had been recorded over. The affidavit also states that the Sheriff's Department failed to fingerprint the six pack of beer in the refrigerator even though Karen Rossi told the detectives that Victor Rossi did not drink beer. In the affidavit, Karen Rossi expresses her personal belief that Daniel Blank did not kill Victor Rossi.[56]

The petitioner attached an affidavit from Victor Rossi's sister, Viola Rossi,[57] who lived on Victor Rossi's street at the time of the murder. Viola Rossi attests that she saw Judy Recile drive down the street on October 27, 1996. Recile stopped to talk to her, asking where Victor Rossi was because they had plans to go shopping but he had not called. Viola Rossi attests that she saw Recile drive by the house one more time during the day. The affidavit attests that Viola Rossi heard a scream after dark coming from Victor Rossi's house. She found Melanie Rossi, Judy Recile and another girl at Victor Rossi's house, where she saw Victor Rossi's body lying on the couch with a towel over his head. Viola Rossi attests that she heard Judy Recile immediately

---

[55] R. Doc. 15-4, pp. 2-10.
[56] R. Doc. 15-4, pp. 15-19.
[57] R. Doc. 15-4, pp. 20-25.

accuse Miller Terry[58] of murdering Victor Rossi. Viola Rossi also states that she witnessed Sheriff Wiley drive off from the scene with Judy Recile. Later, she attended a meeting with Sheriff Wiley where he stated that he wanted to "come clean" and admitted that he took Judy Recile home that night. Viola Rossi's affidavit also complains about the Sheriff's Department's failure to collect and analyze cigarette butts that were found by her husband in a clearing behind Victor Rossi's home.

Victor Rossi's niece, Kimberly Renee Carden, (daughter of Viola Rossi) was 11 years old at the time of Victor Rossi's murder and lived on his street.[59] Carden's affidavit states that on the day of her uncle's murder she was playing in her front yard and saw a "big, burly man" coming out of her uncle's house. She later saw the same man at her uncle's funeral. Carden attests that she asked the man at the funeral if his name was Miller Terry and he said, "yes."

The allegations in Claim 6 center around the petitioner's contention that his counsel failed to adequately investigate the Rossi murder and that an adequate investigation would have uncovered the information contained in the attached affidavits. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. Any decision by counsel not to investigate is assessed for reasonableness under all the circumstances, with a heavy measure of deference to counsel's judgment. *Id.* "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003) (internal quotation marks and citations

---

[58] Some of the documents submitted by the petitioner refer to this individual as "Miller Terry" while other refer to him as "Millard Terry." For consistency, the Court will refer to him as "Miller Terry."

[59] R. Doc. 15-4, pp. 27-29.

omitted). The reasonableness of an investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* at 527.

While Claim 6 was not raised in the petitioner's application for post-conviction relief, other allegations of ineffective assistance of counsel were raised and the petitioner's trial counsel, Glenn Cortello, gave testimony during the evidentiary hearing on July 21-23, 2015.[60] Cortello was questioned over a three-day period about strategic decisions he made as counsel for the petitioner, including decisions concerning how he handled the defense of the "other crimes evidence." On the second day of the hearing, Cortello was asked about the defense team's investigation of Victor Rossi's murder.[61] Cortello was presented with a document prepared by Lieutenant Benny Delat, who questioned the petitioner two days after the Rossi murder.[62] The document notes that Lieutenant Delat did not see any evidence that the petitioner had recently been involved in a struggle. When asked why he did not use the document at trial, trial counsel expressed his concern over attorney-client privilege. The judge ruled that trial counsel could waive the privilege.[63]

Trial counsel then proceeded to discuss the investigation conducted by the defense team into the Rossi murder. He testified that they attempted to locate the other individual who was named in Lieutenant Delat's document who was also questioned about the murder. He also testified that the defense team confirmed the information contained in the document regarding the petitioner's past and the dispute that led to Victor Rossi terminating the petitioner's

---

[60] 14-3, pp. 246-250; 14-4, pp. 1-79; 101-516; 15-1, pp. 1-82.
[61] 14-4, pp. 189-203.
[62] R. Doc. 15-1, p. 208.
[63] See *Laughner v. United States,* 373 F.2d 326, 327 (5th Cir. 1967) (When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications).

employment. Trial counsel then testified that he knew that Victor Rossi was sleeping on the couch when he was murdered with the baseball bat and he would not expect to see any evidence of a struggle on the perpetrator. When asked how he knew the murder occurred while Rossi was asleep on the couch, trial counsel testified that he was told privately by his client and he believed his client was telling the truth.[64] Trial counsel also testified that this information led him to "prioritize and rule out where to focus our efforts."[65] Under the circumstances, and under *Strickland's* "doubly deferential" standard for strategy decisions, the Court cannot say that counsel's investigation of the Rossi murder was deficient.[66] The petitioner's allegation that his counsel should have investigated a theory that someone else committed the murder of Victor Rossi is not compatible with what the petitioner conveyed to his attorney at the time. *See Williamson v. Moore,* 221 F.3d 1177, 1180 (11th Cir. 2000) (counsel not ineffective in choosing particular defense strategy in capital case where reasonable counsel would have determined that petitioner's alternative theory "was inconsistent with Petitioner's own description of the killing"). *See also, Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.") Thus, the petitioner cannot satisfy the *Strickland's* deficiency prong and his underlying ineffective assistance of counsel claim fails.

---

[64] R. Doc. 14-4, 190-198.

[65] R. Doc. 14-4, p. 197.

[66] Assuming the trial court would have allowed the petitioner's trial counsel to present the testimony contained in the affidavits submitted to this Court, trial counsel likely would have run afoul of the Louisiana Rules of Professional Conduct. Under Rule 3.3(a)(4) of the Louisiana Rules of Professional Conduct, a lawyer shall not "offer evidence that the lawyer knows to be false." Furthermore, under subsection (c), "[a] lawyer may refuse to offer evidence that the lawyer reasonably believes is false." See also, *Nix v. Whiteside,* 475 U.S. 157 (1986) ("Counsel's duty of loyalty to, and advocacy of, the defendant's cause is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth. Although counsel must take all reasonable lawful means to attain his client's objectives, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law.")

The petitioner's underlying claim of ineffective assistance of trial counsel claim also fails because he cannot demonstrate prejudice. The affidavits attached by the petitioner merely offer the Rossi family member's opinions that other suspects may have been involved in the murder and personal beliefs that Sheriff Wiley's personal relationship with Judy Recile negatively impacted the investigation. The petition lays out a case for prejudice in Claim 6 based on a highly speculative chain of events: Sheriff Wiley's relationship with Judy Recile, who may have been involved in the murder; caused the Ascension Parish Sheriff's Department to inadequately investigate; and if the Ascension Parish Sheriff's Office had conducted an adequate investigation; they would have discovered the identity of viable alternative suspects; which, in turn, could have been presented to the jury at trial; which could have undermined the reliability of Daniel Blank's confession to Victor Rossi's murder; which would have also undermined the reliability of his confession to Lillian Philippe's murder; and may have changed the outcome of the trial.[67]

Allegations of a "putative chain of events" stemming from trial counsel's allegedly deficient conduct are "too indefinite to show prejudice." *Bradford v. Whitley,* 953 F.2d 1008, 1012 (5th Cir. 1992). Speculation, that but for police incompetence, other evidence would have been discovered, does not show prejudice. *Reed v. Stephens*, 739 F.3d 753, 777 fn. 13 (5th Cir. 2014) *citing*, *Paz v. Scott,* 68 F.3d 471, 1995 WL 581882, at *2 (5th Cir. 1995) (unpublished table decision). One cannot satisfy the second prong of *Strickland* with mere speculation and

---

[67] The petitioner's brief on the procedural objections does not mention the allegations concerning Sheriff Wiley's personal connection to Judy Recile. The brief argues that the petitioner was prejudiced by his trial counsel's failure to further investigate Recile as a possible suspect due to a note found at the crime scene indicating a romantic dispute with the victim. The brief also argues that trial counsel was ineffective for failing to investigate and uncover the information known by the Rossi family members that would have indicated Miller Terry was a viable suspect in the murder. Regardless of how the petitioner massages the contours of his case for prejudice in Claim 6, it relies upon a putative chain of events too speculative too overcome the strong presumption of competence and establish ineffective assistance of counsel.

conjecture. *Id.* A claim based on speculation is insufficient to overcome the strong presumption of competency and high burden of actual prejudice required to establish ineffective assistance of counsel. *Carter v. Johnson,* 131 F.3d 452, 464 (5th Cir. 1997). Thus, the petitioner's underlying ineffective assistance of trial counsel also fails to meet the second prong of the *Strickland* analysis. The petitioner's claim that his counsel was ineffective for failing to further investigate the Victor Rossi murder fails both prongs of the *Strickland* analysis. Therefore, this claim is insubstantial and not subject to the *Martinez* exception.

The petitioner also contends that his counsel was ineffective because he failed to independently DNA test the Victor Rossi murder weapon to identify the unknown person whose DNA was found on the murder weapon during the testing conducting by the FBI laboratory. The petitioner has provided the Court with a copy of the FBI's DNA analysis.[68] The lab report, dated June 14, 1999, states that the analysis determined that blood from the baseball bat contained DNA from more than one individual. The report also states that Daniel Blank was excluded as a contributor to any of the DNA located on the baseball bat.

The record reflects that the petitioner's trial was originally set to commence on March 2, 1999. The petitioner's trial counsel filed a motion to continue the trial on the grounds that the results from the FBI crime laboratory testing were not yet available.[69] On February 10, 1999, the trial judge continued the trial without date.[70] After a motion filed by the prosecution on March 17, 1999, the trial judge reset the trial to begin on August 16, 1999.[71] On May 11, 1999 the petitioner's trial counsel filed a second motion for a continuance on the grounds that the FBI still

---

[68] The report was attached to the petitioner's *Motion to Transfer Evidence to Defense Expert Bode Technology*, R. Doc. 27-4, pp. 3-5.
[69] R. Doc. 59-8, pp. 73-75.
[70] R. Doc. 59-8, p. 82.
[71] R. Doc. 59-8, p. 83.

had possession of the forensic materials and the laboratory results had not yet been received by the defense.[72]

A contradictory hearing on the second motion to continue was held on June 10, 1999.[73] Mike Toney, a detective with the Ascension Parish Sheriff's Office, testified that the FBI report would be forthcoming by the end of the week and that the report would show that none of the DNA linked the petitioner to any of the crimes.[74] The petitioner's trial counsel testified at the hearing that he had not yet received any FBI lab reports and that the state had been in possession of the physical evidence since the crimes occurred; late 1997 through the middle of 1998. He also testified that the evidence was essential to the petitioner's defense. Trial counsel testified that he had contacted an expert to test the evidence, who said it would take three to four months to conduct the testing once it was received.[75] Trial counsel testified that he wanted to test the evidence to find out if someone other than the petitioner committed any of the crimes.[76] The trial judge denied the petitioner's motion to continue the trial without prejudice, to be re-urged if the FBI report was not received as promised.[77]

The FBI report is dated June 14, 1999, four days after the contradictory hearing. On June 24, 1999, the petitioner's trial counsel filed a supervisory writ with the Louisiana First Circuit Court of Appeal challenging the denial of the motion to continue.[78] The First Circuit denied the writ on July 19, 1999.[79] The petitioner sought further review with the Louisiana Supreme Court, which was denied on August 5, 1999.[80]

---

[72] R. Doc. 59-8, pp. 106-108.
[73] R. Doc. 60-4, pp. 28-62.
[74] R. Doc. 60-4, pp. 33-36.
[75] R. Doc. 60-4, p. 43.
[76] R. Doc. 60-4, p. 45.
[77] R. Doc. 60-4, pp. 56-62.
[78] R. Doc. 59-8, pp. 115-116.
[79] R. Doc. 59-8, p. 242.
[80] R. Doc. 59-8, p. 252.

The petitioner contends in Claim 10 of his federal habeas petition that the trial judge abused his discretion when he denied the second motion to continue the trial. The habeas petition specifically mentions that the trial judge's decision denied the defense team the opportunity to independently test the baseball bat used to murder Victor Rossi, which contained the DNA of an unknown person, who was not Daniel Blank, mixed with the victim's DNA.[81] In Claim 10, the petitioner unequivocally takes the position that his trial counsel was diligent in his efforts to obtain the forensic evidence in advance of trial:

> It is clear that trial counsel was diligent in its efforts to obtain the physical evidence but was stonewalled by the State. Trial counsel identified the probability of procuring the testimony within a reasonable time (three to four months, which was far more expedient than the State's protracted testing). Trial counsel described with specificity the outcome of the testing and how it would be favorable to Mr. Blank (that Mr. Blank's innocence would be conclusively established). Testing the physical evidence would clearly have rendered "unique" testimony, in that it could have identified the true perpetrator.[82]

Turning now to Claim 6, the petitioner is requesting that the Court excuse his procedural default through the exception found in *Martinez v. Ryan*. As discussed above, the petitioner must first show that his ineffective assistance of trial counsel claim with respect to the DNA testing of the Victor Rossi murder weapon has some merit. The petitioner argues that his counsel was ineffective for failing to have the baseball bat tested,[83] but the Court notes that this position is wholly inconsistent with the arguments made in Claim 10 that his counsel was diligent in his efforts to obtain the physical evidence for testing, but was "stonewalled" by the state and unfairly denied a continuance by the trial judge.[84]

---

[81] R. Doc. 12, pp. 436-437.
[82] R. Doc. 12, pp. 439-440.
[83] R. Doc. 12, p. 256.
[84] The petitioner also advanced this position in his post-conviction proceedings when he filed a *Motion for Access to and Examination of Physical Evidence and for Production of Materials and Documents Relating to Pretrial Testing*

25

Notwithstanding these inconsistent / alternative positions, the record establishes that the petitioner cannot meet the first prong of the *Strickland* standard for his underlying ineffective assistance of trial counsel claim. The record reflects that the petitioner's trial counsels' performance was not deficient. Trial counsel twice sought a continuance of the trial on the grounds they did not have access to the FBI lab report and evidentiary materials; testified at the contradictory hearing that testing the evidence was necessary and essential for the defense, including the identification of the perpetrators of the crimes; contacted an expert regarding testing the materials to determine how long it would take to complete the testing; and sought review of the denial of the continuance with the First Circuit and the Louisiana Supreme Court.

The petitioner fails to identify how the efforts by his trial counsel to obtain the Victor Rossi murder weapon for independent testing in advance of trial are deficient. The record reflects that the petitioner's trial counsel utilized available procedural mechanisms to attempt to obtain the materials for testing in advance of trial. The Court cannot say that trial counsel's performance fell below an "objective standard of reasonableness." *Reed v. Stephens,* 739 F.3d 753, 773 (5th Cir. 2014). Thus, the petitioner's underlying claim for ineffective assistance of trial counsel with respect to the DNA testing of the Victor Rossi murder weapon fails to meet the deficiency prong

---

*and Results*. R. Doc. 62-3, pp. 213-224. The motion asks for access to the physical evidence used to convict the petitioner for the purpose of forensic testing and specifically requests access to the Victor Rossi murder weapon. Notably, petitioner's post-conviction brief argued, "Petitioner has never been able to access the prolific amount of available physical evidence in this case in order to perform independent forensic testing, despite the repeated attempts of both trial and post-conviction counsel, over a nearly *fifteen year* period to enforce the State's agreement to open file discovery and its constitutional obligation to provide such evidence." R. Doc. 62-3, at 215. Accordingly, the record also reflects that the petitioner cannot meet the second prong of the *Martinez* exception: ineffective assistance of post-conviction counsel. It was not deficient for post-conviction counsel to fail to bring a claim for ineffective assistance of trial counsel to fail to test the baseball bat because that claim would have been inconsistent with the factual representations to the trial court that trial counsel made repeated attempts to access the baseball bat for forensic testing. It is apparent from the post-conviction record that a significant aspect of post-conviction counsels' strategy was to gain access to forensic material for additional testing. Counsel also filed a *Writ of Mandamus* in order to obtain a complete copy of the FBI files (R. Doc. 62-9, pp. 143-152) and subpoenas to law enforcement agencies. R. Doc. 62-2, pp. 9-30. Arguing that trial counsel failed to test the baseball bat would have run counter to, and damaged post-conviction counsels' position that the defense never had access to the baseball bat and other forensic material for testing prior to the post-conviction proceedings.

of the *Strickland* analysis. This part of Claim 6 is also insubstantial and does not qualify for the *Martinez v. Ryan* exception.

Next, the petitioner argues that his default of Claim 6 should be excused under the "actual innocence" exception announced in *Schlup v. Delo,* 513 U.S. 298 (1995). Fifth Circuit precedent precludes a freestanding actual innocence claim. *See Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *In re Swearingen,* 556 F.3d 344, 348 (5th Cir.2009); *see also Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006) ("[A]ctual-innocence is *not* an independently cognizable federal-habeas claim."); *see, e.g., Matheson v. United States,* 440 Fed. Appx. 420, 421 (5th Cir. 2011). *See also*, *Herrera v. Collins,* 506 U.S. 390 (1993); *McQuiggin v, Perkins*, 569 U.S. 383 (2013).  Even if the petitioner could meet *Schlup's* demanding threshold for a showing of actual innocence,[85] the Court would merely be permitted to entertain the merits of his defaulted ineffective assistance of counsel claim. As discussed above, the Court has thoroughly reviewed the record and determined that the ineffective assistance of counsel claim found in Claim 6 lacks merit.

Accordingly, Claim 6 is unexhausted and procedurally defaulted, does not qualify for an available exception to procedural default, and therefore should be dismissed.

**Claims 23, 27 & 28**

Claim 23 argues that Louisiana's death penalty statute is unconstitutional. Specifically, the petitioner contends that the statute fails to narrow the class of offenders eligible for the death penalty as required by United States Supreme Court precedent. In Claim 27 the petitioner argues that his death penalty sentence violates international human rights law and customary

---

[85] *See McQuiggin v, Perkins*, 569 U.S. 383 (2013) ("A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.")

international law. In Claim 28 the petitioner argues that the execution of a mentally ill person violates the Eighth Amendment.

The petitioner raised Claims 23, 27 and 28 in his application for post-conviction review.[86] At the close of an evidentiary hearing held by the trial court on July 20-24, 2015, the state orally moved to dismiss several of the petitioner's claims, including 23, 27, and 28 on the grounds the petitioner failed to present any evidence to substantiate the claims.[87] The trial court granted the state's motion and subsequently issued a written ruling on September 29, 2015.[88] The petitioner appealed the trial court's dismissal of these claims. When the petitioner submitted his brief to the Louisiana Supreme Court, he assigned the dismissal of these claims as error, but did not brief the substance of the claims. Specifically, in "Assignment of Error XV" in his brief, the petitioner simply lists, *inter alia*, Claims 23, 27 and 28 and states,

> [these claims] were erroneously dismissed by the district court in violation of Applicant's rights under the United States Supreme Court precedent and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution…This Court should reverse the district court's rulings because they conflict with the previous decisions of this Court and the Supreme Court of the United States, La.S.Ct. Rule X(a)(1); constitute an erroneous interpretation of the constitution and the laws of Louisiana, La.S.Ct. Rule X(a)(4); and represent a gross departure from proper judicial proceedings La.S.Ct. Rule X(a)(5). [89]

When the Louisiana Supreme Court ruled on the petitioner's writ application, it considered the petitioner's briefing on Claims 23, 27 and 28 to be inadequate and a violation of Louisiana Supreme Court rules:

---

[86] Claim 23 is labeled "23" in the petitioner's First Supplemental Post-Conviction Application, Claim 27 is labeled "17" & "22" in the petitioner's First Supplemental Post-Conviction Application, and Claim 28 is labeled "20" in the petitioner's First Supplemental Post-Conviction Application (R. Doc. 62-4, pp. 43-241).
[87] R. Doc. 63-5, pp. 169-174.
[88] R. Doc. 63-4, pp. 66-73.
[89] R. Doc. 63-12, pp. 145-146.

> And because Blank provides no supporting arguments for his remaining claims, he has waived them. *See* La.S.Ct.R. X, § 4(3)(d) (requiring "argument of each assignment of error on the facts and the law...."); La.S.Ct.R. VII, § 6 (assignments of error made but not briefed considered abandoned); *State v. Bay,* 529 So.2d 845, 851 (La.1988).

*State v. Blank*, 2016-0213 (La. 5/13/16); 192 So.3d 93, 103.

Because Blank failed to present Claims 23, 27, and 28 to the Louisiana Supreme Court in a procedurally proper manner according to the Louisiana Supreme Court rules, he failed to exhaust these claims. *See Smith v. Cooper*, 2006 WL 4650257, at *8 (W.D. La. Nov. 9, 2006) (petitioner failed to exhaust because Louisiana Supreme Court brief did not adequately address assignment of error in compliance with La.S.Ct.R. X, § 4(3)(d)); *Thomas v. Cain*, 2006 WL 2990083, at *17 (W.D. La. Sept. 18, 2006) (petitioner failed to exhaust because Louisiana Supreme Court brief did not comply with La.S.Ct.R. X § 4 by attempting to adopt arguments made in briefs presented to lower courts).

If the petitioner were to attempt to assert these unexhausted claims to the Louisiana Supreme Court a second time, he would be barred by Supreme Court Rule X, § 5. When a petitioner fails to timely and properly present his claims to the Louisiana Supreme Court and is time-barred from seeking further relief in the Louisiana courts because he has allowed his state court remedies to lapse, those claims are "technically exhausted" but nevertheless procedurally defaulted. *Wilder v. Cockrell,* 274 F.3d 255, 262 (5th Cir.2001) citing *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001); *Magouirk v. Phillips,* 144 F.3d 348, 357 (5th Cir.1998) citing *Coleman v. Thompson,* 501 U.S. 722 at 731–33, and 735 at fn. 1 (1991; *Bledsue v. Johnson,* 188 F.3d 250, 254–55 (5th Cir.1999) citing *Coleman,* 501 U.S. 735 at fn. 1 (1991) and *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995); *Fuller v.*

*Johnson,* 158 F.3d 903, 905–06 (5th Cir.1998). In such a case there is no difference between non-exhaustion and procedural default. *Id.*

Federal review of a technically exhausted and procedurally defaulted claim is precluded unless the petitioner can show that the applicable procedural rule is not regularly followed[90] and "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[91] *Jones v. Jones,*163 F.3d 285, 296 (5th Cir. 1998); *Nobles v. Johnson,* 127 F.3d 409, 423 fn.33; *Williams v. Cain,* 125 F.3d 269, 276 (5th Cir. 1997).  To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478 (1986). In this case, the petitioner has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. Further, this court's review of the record does not support a finding that any factor external to the defense prevented the petitioner from following the necessary procedure to preserve his right to raise the defaulted claims in the instant habeas petition.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson,* 131 F.3d 466, 497 (5th Cir. 1997) (citation omitted). Having failed to show an objective cause for the default,

---

[90] The petitioner argues that the Court should consider his defaulted claims because the Louisiana Supreme Court does not regularly follow its briefing rules in death penalty cases, citing *State v. Bay,* 529 So.2d 845, 851 (La. 1988)*.* "A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. A rule can be 'firmly established' and 'regularly followed, even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Walker v. Martin,* 562 U.S. 307, 316, citing *Beard v. Kindler,* 558 U.S. 53, 60-61 (2009). In any event, the petitioner's default cannot be excused because he has failed to show cause for the default.
[91] The petitioner has not advanced any argument that the failure to exhaust Claim 23, Claim 27, or Claim 28 should be excused pursuant to the fundamental miscarriage of justice exception.

the court need not determine whether prejudice existed. Claims 23,[92] 27, and 28[93] are therefore procedurally defaulted and should be dismissed.

## Independent and Adequate State Ground Doctrine

When a state court decision to deny post-conviction relief rests on a state procedural basis that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the Petitioner's federal claims. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Moore v. Roberts,* 83 F.3d 699, 701 (5th Cir. 1996). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman v. Thompson, supra,* 501 U.S. at 729–730. The basis for the application of the doctrine is grounded in concerns of comity and federalism and is related to the requirement that a habeas petitioner first provide the state courts with an opportunity to address and correct violations of a prisoner's federal rights:

> [A] habeas petitioner who has failed to meet the states' procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.... In the absence of the independent and adequate state

---

[92] The respondent also argues that Claim 23 and Claim 27 are barred by the independent and adequate state ground doctrine because the trial court dismissed the claims based on Louisiana Code of Criminal Procedure, Article 926(B)(3). Neither the hearing transcript, nor the written judgment, nor the written reasons for judgment *explicitly* reflect that the trial court dismissed Claim 23 and Claim 27 on these grounds or any other independent and adequate state ground. Instead, the trial court's ruling appears to be based on a failure of the petitioner to meet his burden of proof, which is a determination on the merits. The respondent also argues that Claim 23 is barred because the petitioner failed to notify the Louisiana Attorney General of his constitutional challenge. The record reflects that the state never raised this issue during the state court proceedings, and it was never addressed by any of the state courts; thus Claim 23 was never explicitly dismissed due to the failure to notify the Louisiana Attorney General and is not barred by the independent and adequate state ground doctrine. However, as discussed herein, the Court finds that Claim 23 and Claim 27 are unexhausted and procedurally defaulted.

[93] The respondent further argues that the petitioner voluntary dismissed Claim 28 during the post-conviction proceedings. The record reflects that the petitioner filed a voluntary motion to dismiss Claim 2 of his original PCR, which was a claim that it is a violation of the Eighth Amendment to execute a mentally retarded individual (R. Doc. 63-2, pp. 167-169). However, Claim 28 of the petitioner's federal habeas petition was brought as a separate claim in his First Supplemental PCR labeled as "Claim 20." This claim asserts that it is a violation of the Eighth Amendment to execute someone who is *mentally ill*. This claim was not voluntarily dismissed by the petitioner during the post-conviction proceedings.

> ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731–32. For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been explicitly based on a state procedural rule. *Moore v. Roberts, supra,* 83 F.3d at 702. The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by (1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Id. See also, Coleman v. Thompson, supra,* 501 U.S. at 750.

The respondent contends that the following claims are barred by the independent and adequate state ground doctrine: 3(D), 11(A), 14(C), 16, 24, & 26.

**Claim 3(D) & 14(C)**

As discussed above, in Claim 3(D), the petitioner contends that the trial court failed to charge the jury with a limiting instruction regarding the proper use of the "other crimes" evidence.[94] In Claim 14(C) the petitioner contends that the trial court's reasonable doubt instruction minimized the state's burden of proof and deprived him of a fair trial. The petitioner raised these claims on direct appeal.

---

[94] R. Doc. 12, p. 150-151. Although the Court finds that Claim 3(D) should be dismissed because it is unexhausted and procedurally defaulted, the Court also finds that Claim 3(D) should be dismissed because it is procedurally barred pursuant to the independent and adequate state ground doctrine.

The respondent argues that the claims are procedurally barred because the Louisiana Supreme Court found the claims to be waived pursuant to Louisiana's contemporaneous objection rule. In discussing claim 3(D), the Louisiana Supreme Court held:

> In his final claim relating to admission of the other crimes evidence, defendant argues that the court read a misleading limiting instruction when it charged the jury as follows:
>
>> ... Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of *motive, opportunity,* intent, *preparation, plan, knowledge, identity,* absence of mistake or accident. You are advised of the limited purpose for which the evidence was received. (emphasis added).
>
> Defendant maintains that proof of the other murders was not admissible to show motive, opportunity, preparation, plan, knowledge or identity and hence that jurors may have considered the evidence for a prohibited or irrelevant purpose.
>
> As an initial matter, defendant did not object to the charge on the basis that it would allow jurors to consider the evidence for an impermissible purpose and thus waived the claim. La.C.Cr.P. art. 841; *see State v. Sims,* 426 So.2d 148, 155 (La.1983) (new basis for an objection may not be urged for the first time on appeal); *State v. Stoltz,* 358 So.2d 1249, 1250 (La.1978) (same); *State v. Ferguson,* 358 So.2d 1214, 1220 (La.1978) (same).
>
> In any event, arguably, the court should have instructed the jury that it could only consider the other crimes evidence to prove intent, lack of accident or mistake. *See* Louisiana Judges' Criminal Bench Book § 5.04 (suggesting that the court instruct the jury that it may consider the crimes evidence for the "sole purpose" of whether it tends to show "purpose for which the court has admitted the evidence, *e.g.,* to show guilty knowledge, absence of mistake or accident, intent, system, motive or identity."). However, in the state's closing, the prosecutor argued forcefully that the "limited purpose" of the crimes evidence was "to show either the intent of the [d]efendant, absence of a mistake on the part of the [d]efendant, or absence of an accident on the part of the [d]efendant." Given the entirely speculative nature of the claim concerning jurors possibly misinterpreting the instruction, this claim lacks merit.

*State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 127 fn. 27 (unpublished appendix).

In discussing Claim 14(C), the Louisiana Supreme Court held:

Next, defendant claims that the trial court's reasonable doubt instruction violated *State v. Cage,* 583 So.2d 1125 (La.1991) and *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) because it contained an "impermissible articulation requirement" which shifted the burden of proof to the defense. Specifically, defendant points to the portion of the reasonable doubt definition in which the court instructed the jury, "Reasonable doubt is based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot *say* that you are firmly convinced of the truth of the charge."

As an initial matter, trial counsel failed to object to the instruction at the time the judge delivered it**.** Accordingly, the defense failed to preserve the issue for review. La.C.Cr.P. art. 841; *State v. Taylor,* 93–2201, p. 7 (La.2/28/96), 669 So.2d 364, 369 (scope of review in capital cases is limited to alleged errors occurring during the guilt phase that are contemporaneously objected to). In any event, the court's instruction essentially mirrors that which appears in the *Louisiana Judges' Criminal Bench Book,* § 3.03, and does not, in fact, require a juror to articulate why a juror has a reasonable doubt. This claim lacks merit.

*State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 140 (unpublished appendix).

The petitioner argues that the procedural bar should be excused because the Louisiana Supreme Court discussed the merits of the claims after determining that the claims were waived, *citing Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Victor v. Nebraska,* 511 U.S. 1 (1994); and *Hodges v. Epps*, 648 F.3d 283 (5th Cir. 2011). The petitioner's reliance on those cases is misplaced because they stand for the proposition that when the last state court to hear the case *ignores* the procedural bar and addresses the merits of the federal claim, the federal court is not barred from hearing the habeas claim.  However, when the last state court to hear the case recognizes the state procedural default and reaches the merits in the alternative, as done by the Louisiana Supreme Court here, the claim is procedurally barred. *Harris v. Reed,* 489 U.S. at 264 fn. 10; *Fisher v. Texas,* 169 F.3d 295 at 300 (5th Cir. 1999); *Corwin v. Johnson,* 150 F.3d 467 at 473 (5th Cir. 1998); *Rogers v. Scott,* 70 F.3d 340, 342 (5th Cir. 1995).

The Louisiana Supreme Court explicitly found that the petitioner waived his right to appeal Claims 3(D) and 14(C) because his trial counsel failed to enter a contemporaneous

34

objection. Louisiana's contemporaneous objection rule, found in Louisiana Code of Criminal Procedure Article 841, is an independent and adequate state ground that acts as a procedural bar. *Duncan v. Cain*, 278 F.3d 537, 543 (5th Cir. 2002). Accordingly, Claim 3(D) and 14(C) are procedurally barred and should be dismissed.[95]

**Claim 11(A)**

In Claim 11(A)[96] the petitioner contends that two jurors in the venire, Jeanette E. Theriot and Wayne Eschete, should have been excused for cause because of how they responded to questioning during voir dire regarding the thought process they would use in voting for the death penalty. The respondent asserts that this claim is barred pursuant to the independent and adequate state ground doctrine because the petitioner's counsel failed to utilize available peremptory challenges to prevent jurors Theriot and Eschete from serving on the petit jury.

The petitioner raised this claim on direct appeal. The Louisiana Supreme Court dismissed the petitioner's claim:

> **Jeanette E. Theriot:** Defendant claims that the court should have granted his challenge for cause to prospective juror Jeanette Theriot because she indicated that she could consider a life-sentence only in circumstances in which the murder was "justified." Jeanette Theriot was among the first of three large panels of prospective jurors. She was questioned on voir dire in the fourth group in Panel One. The groups were first questioned as to death-phase qualifications and for cause challenges were made at that time. Theriot was challenged for cause and the trial court denied that challenge. The jurors in groups A–D of Panel One remaining after the for cause challenges then underwent general voir dire questioning and counsel were given the opportunity to exercise their peremptory challenges. Instead of exercising one of his twelve peremptory challenges then available against Theriot, defense counsel agreed with the State that she be selected as a juror, and she did indeed sit as a juror. Because he did not exercise an available peremptory challenge against Theriot, any erroneous ruling by the trial court did not deprive defendant of a peremptory

---

[95] The respondent does not offer any "cause" for his failure to comply with the contemporaneous objection rule, nor does the record reflect any factor external to the defense that prevented counsel from objecting to the referenced jury instructions. *See Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

[96] The respondent mistakenly labeled the petitioner's claim concerning jurors Eschete and Theriot as "11(B)" when briefing their objection. Because the respondent discussed the substance of the petitioner's Claim 11(A), the Court has construed the respondent's objection to 11(B) as an objection to 11(A).

challenge; thus, defendant waived his right to assert this claim on appeal. *State v. Connolly, supra* at 818; *State v. Bourque, supra* at 229.

**Wayne P. Eschete:** Defendant claims juror Wayne Eschete should have been removed for cause because his testimony indicated that he would automatically vote for the death penalty notwithstanding any mitigation the defense might introduce if the state demonstrated that he committed "a series of aggravated burglaries where people were killed." However, just like Theriot, because defense counsel failed to exercise one of its twelve available peremptory challenges against him, this claim is waived. *State v. Connolly, supra.*

*State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 114, 122 (unpublished appendix).

The petitioner argues that his federal claim is not procedurally barred because the Louisiana Supreme Court reached the merits of his state law claim regarding jurors Theriot and Eschete but overlooked his federal claim. The petitioner argues that the Louisiana Supreme Court cited to *State v. Connolly,* 96–1680 (La.7/1/97), 700 So.2d 810, 818 and *State v. Bourque*, 622 So. 2d 198, 229 (La. 1993), and thereby ruled on the merits of his state law claim that he was denied peremptory challenges under the Louisiana Constitution. However, the pinpoint citations used by the Louisiana Supreme Court, *State v. Connolly* (at p. 818) and *State v. Bourque*, (at p. 229) refer specifically to the waiver of the right to appeal any claim that a challenge for cause was erroneously denied when peremptory challenges are available. The Louisiana Supreme Court did not overlook the petitioner's federal claim; it explicitly declined to hear it based on a state procedural bar.

The Louisiana Supreme Court denied the petitioner relief with respect to jurors Theriot and Eschete based upon a procedural bar; namely, his failure to exercise a peremptory challenge when his cause challenge was rejected, thereby waiving his right to challenge the trial court's denial of his cause challenge on appeal. Waiver of the right to challenge the trial court's denial of challenge for cause on appeal under these circumstances is procedurally barred under the independent and adequate state ground doctrine. *See Stein v. Cain,* 2009 WL 936975 (E.D. La.

36

Apr. 6, 2009). Claim 11(A) is therefore procedurally barred from review by this federal habeas corpus court.[97]

**Claim 16**

In Claim 16 the petitioner contends that the trial court erred in failing to grant his second and third motions for a change of venue.[98] The petitioner raised this claim in his direct appeal to the Louisiana Supreme Court, which in addressing the claim held:

> Pursuant to a defense motion, the trial court granted a change of venue from Ascension to Terrebonne Parish. Defendant filed a second motion for a change of venue on August 9, 1999, based on prospective jurors' exposure to another capital case recently tried in Terrebonne Parish, *State v. Louviere,* 00–2085 (La. 9/4/02) 833 So.2d 885. Defendant filed a third motion on August 24, 1999, in which he claimed that police should not have released information demonstrating that he had confessed to the crimes and again raising the specter of the case against Chad Louviere. The trial court denied the motion(s) on timeliness grounds and also found that he failed to comply with La.C.Cr.P. art. 621 because:
>
> a. It was not sworn to by mover or his counsel;
> b. It contained no statement that the motion was not made for the purpose of delay;
> c. It would have caused a delay of the trial; and
> d. It was filed shortly after the Louisiana Supreme Court denied one Motion to Continue and defense withdrew a second.
>
> Finally, the court stated the facts of the two cases were dissimilar, most notably because in *Louviere,* unlike the instant case, "both the victim and the defendant were well known in Terrebonne Parish."
>
> Although La.C.Cr.P. art 621 generally requires that a motion for a change of venue shall be filed in accord with La.C.Cr.P. art 521, i.e., before trial and within 15 days of arraignment, the article nevertheless gives a trial court the discretion to entertain the motion "any time before the first witness is sworn at the trial on the merits." The code article also requires that the motion must be in writing and contain sworn allegations of fact by counsel or the defendant, as well as a statement that the motion is not made for purposes of delay "but to obtain a fair and impartial trial."
>
> Arguably, at least, defendant's non-compliance with the code articles precludes review of this claim on appeal. *State v. Sosa,* 328 So.2d 889, 891 (La.1976); *State*

---

[97] As with Claims 3(D) and 14(C), the respondent does not offer any "cause" for his failure to comply with the contemporaneous objection rule, nor does the record reflect any factor external to the defense that prevented counsel from objecting to the referenced jury instructions. *See Coleman, supra*.
[98] R. Doc. 12, pp. 516-520.

*v. Shamblin,* 301 So.2d 320, 321 (La.1974). In any event, as discussed below, defendant fails to show entitlement to relief on the merits.

*State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 140 (unpublished appendix).

The Louisiana Supreme Court's use of the term "arguably" indicates that there was some question as to whether it was barred from considering the petitioner's claim (Claim 16).[99] Accordingly, the Louisiana Supreme Court did not "clearly and expressly" dismiss Claim 26 on an independent and adequate state ground. *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (in order to fulfill the independence requirement, the last state court rendering a judgment must "clearly and expressly" indicate that its judgment rests on a state procedural bar.) Thus, the Court is not barred from considering the merits of Claim 16.

**Claim 24**

In Claim 24 the petitioner contends that his trial counsel was ineffective for failing to quash the bill of information because the grand jury foreperson was selected in a discriminatory manner.[100] The petitioner raised the issue in his application for post-conviction relief. The trial court dismissed the claim on the state's procedural objection:

> Claim 9: Trial counsel were ineffective for failing to investigate and present a Motion to Quash the Bill of Information because the foreperson of petitioner's grand jury was selected in a gender and racially discriminatory manner. The defendant contends upon information and belief that his grand jury was contaminated by racial and gender bias. By failing to present a Motion to Quash

---

[99] Footnote 6 of the Louisiana Supreme Court's unpublished appendix addressing this issue reads as follows: "No written order addressing the third motion can be found in the record. Nonetheless, given the court's ruling which denied the second motion on timeliness grounds, the district judge presumably overruled the third motion on the same procedural basis." This footnote lends further support to the conclusion that the Louisiana Supreme Court did not "clearly and expressly" dismiss the claim on state procedural grounds. Furthermore, the timeline set forth by the Louisiana Supreme Court indicates that when the petitioner raised his second and third motions for a change of venue, the first witness had not yet been sworn (guilt phase began on August 26, 1999, R. Doc. 61-3, pp. 97 *et seq.*). The Louisiana Supreme Court specifically mentioned that the article gives the trial judge discretion to grant the change of venue under the circumstances, but also discussed the petitioner's failure to urge the motion in writing. The phrasing of this section of the opinion demonstrates that the Louisiana Supreme Court was questioning whether it was barred from considering the merits of the petitioner's claim under La.C.Cr.P. art 621 and was not imposing the procedural bar and reaching the merits of the claim in the alternative.

[100] R. Doc. 12, pp. 577-581.

the Bill of Information, his counsel was ineffective. The state objects to this claim on the basis that it has already been adjudicated by the Supreme Court. The defendant did in fact raise this issue on appeal. The Louisiana Supreme Court stated that the defendant's failure to file a Motion to Quash the indictment on this basis waived any claim about the selection process of the grand jury which indicted him. However, the Court went on to say that, "At any rate, defendant's claim does not warrant relief given his failure to make any showing that the system fostered discrimination, either in his particular case or in an historical context." As such, this matter has been litigated and adjudicated on appeal. Claim nine of the first supplemental application is dismissed.

*State v. Blank*, No. 10677, 2013 WL 12408100, at *5 (La. Dist. Ct. July 29, 2013). The

Louisiana Supreme Court affirmed, holding that the trial court did not err in dismissing the

ineffective assistance of counsel claim because the Louisiana Supreme Court had already

considered the underlying issues on appeal:

> In *State v. Lee,* 14–2374, pp. 8–9 (La. 9/18/15), 181 So.3d 631, 638, another post-conviction capital case, we explained that an "attempt to re-litigate a claim that has been previously disposed of, by couching it as a post-conviction ineffective assistance of counsel claim, [should be] generally unavailing." As we found in *Lee,* those of Blank's post-conviction ineffective assistance of counsel claims predicated upon issues which were in fact considered on appeal are not truly new claims under La.C.Cr.P. art. 930.4(A).

*State v. Blank*, 2016-0213 (La. 5/13/16), 192 So. 3d 93, 96, fn. 2.

The respondent argues that Claim 24 is barred by the independent and adequate state

ground doctrine because Claim 24 was dismissed by the state courts as repetitive under

La.C.Cr.P. art. 930.4(A).  The petitioner argues that his claim is not barred because his case was

"the first time the newly-minted *Lee* rule was applied."[101] He also argues *State v. Lee* does not

qualify as an independent and adequate state ground because the opinion was issued on

September 18, 2015, after he filed his application for post-conviction review and only eight

---

[101] R. Doc. 73 p. 57.

months before the Louisiana Supreme Court affirmed the dismissal of his post-conviction claims on May 13, 2016.[102]

For a state procedural rule to be "independent," the state law ground for decision must not be "interwoven with the federal law." *Michigan v. Long,* 463 U.S. 1032, 1040 (1983); *see Harris v. Reed,* 489 U.S. 255 (1989) (applying *Long* to federal habeas cases). Otherwise, the state may fairly be said to have examined the federal claim. A state law ground is so interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma,* 470 U.S. 68, 75 (1985). Here, the Louisiana Supreme Court cited La.C.Cr.P. art. 930.4(A) when dismissing Claim 24, but the dismissal was entirely reliant on an antecedent ruling on federal law.

The Louisiana Supreme Court expressly stated, "Blank's post-conviction ineffective assistance of counsel claims predicated upon issues which were in fact considered on appeal are not truly new claims…" *State v. Blank*, 2016-0213 (La. 5/13/16), 192 So. 3d 93, 96, fn. 2. In other words, the Louisiana Supreme Court ruled that when it dismissed the merits of the petitioner's claim regarding the selection of the grand jury foreperson on direct appeal it already determined that the petitioner could not meet the "prejudice" prong of the *Strickland* analysis. *State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 140 (unpublished appendix) ("At any rate, defendant's claim does not warrant relief given his failure to make any showing that the system fostered discrimination, either in his particular case or in an historical context"). Indeed, by calling the claim "repetitive" under Article 930.4(A), the Louisiana Supreme Court held that it already considered the federal law issues raised by the petitioner in Claim 24. Accordingly,

---

[102] R. Doc. 73, p. 58.

Claim 24 is not barred by the independent and adequate state ground doctrine, has been considered by the Louisiana Supreme Court, and is ripe for consideration by this federal habeas Court.[103]

**Claim 26**

In Claim 26, the petitioner contends that his due process rights were violated because an incomplete record was produced due to the court reporter's failure to transcribe all sidebars and bench conferences conducted at trial. The petitioner also complains that the trial transcript does not include numerous contemporaneous objections regarding discrepancies between the audio of the videotape that was played to the jury and the written transcript that was provided to the jury to follow along with as the videotape was played. The petitioner raised this claim in his direct appeal. The respondent argues that the claim is barred by the independent and adequate state ground doctrine.

When addressing Claim 26 the Louisiana Supreme Court held,

In this argument, defendant complains about the court's failure to ensure the transcription of various bench conferences. He also complains because the court reporter did not transcribe the videotapes depicting his confession as they were played for the jury and maintains that the transcript of the confession, prepared by the state and given to the jury, contained errors.

---

[103] Additionally, the rule announced in *State v. Lee*, 14–2374 (La. 9/18/15), 181 So.3d 631, does not qualify as an independent and adequate state ground because it was not "firmly established" at the time the state courts applied it to the petitioner. *See Ford v. Georgia*, 498 U.S. 411, 423–24, (1991). The petitioner filed his direct appeal brief asserting that the grand jury foreperson was selected in a discriminatory manner on April 11, 2005, nearly ten years before the *Lee* rule was announced. R. Doc. 63-8 pp.228 through 63-9 pp. 86. His First Supplemental Application for post-conviction review, which asserted the ineffective assistance claim (Claim 24), was filed on April 1, 2013, more than two years before the *Lee* rule was announced. R. Doc. 62-4, pp.43-242. The trial court dismissed Claim 24 as repetitive on July 29, 2013, two years before the *Lee* rule was announced. *State v. Blank*, No. 10677, 2013 WL 12408100, at *5 (La. Dist. Ct. July 29, 2013). Finally, the Louisiana Supreme Court affirmed the trial court's dismissal of Claim 24 on May 13, 2016, less than a year after *State v. Lee* was decided. As mentioned by the petitioner in his brief, it appears from the *State v. Lee* citing references that the petitioner's case was the first subsequent case to which the Louisiana Supreme Court applied the *State v. Lee* procedural bar. Because the petitioner was not apprised of the procedural bar's existence in time to avoid its application, Claim 24 is not barred by the independent and adequate state ground doctrine. *Ford*, at 423.

La. Const. art. I § 19 guarantees defendants a right of appeal "based upon a complete record of all the evidence upon which the judgment is based." Although this Court has found reversible error when material portions of the trial record were unavailable or incomplete, "[a] slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal [will] not cause ..." reversal of a defendant's conviction. *State v. Ford,* 338 So.2d 107, 110 (La.1976).

Despite defendant's claims to the contrary, a review of the selected inadequacies in the record does not demonstrate that this Court's intervention is warranted. Regarding the unrecorded bench conferences, without an objection, La.C.Cr.P. art. 841, and a showing of prejudice, defendant cannot prevail. *State v. Castleberry,* 98–1338, p. 29 (La.4/13/99), 758 So.2d 749, 773. In this case, defendant fails to show that the unrecorded conferences "prevented [him] from presenting [ ] relevant evidence," or that "prejudice resulted from the absence in the record of the substance of the conferences." *State v. Brumfield,* 96–2667, pp. 14–16 (La.1/29/98), 737 So.2d 660, 669–670. As noted elsewhere in the opinion and appendix, the record reveals that defendant did, in fact, lodge numerous objections to various court rulings and each of those objections was preserved for appellate review and is treated on its merits.

As to any discrepancies between the transcript and the videotape, the latter was the best evidence of the substance of defendant's confession. Defendant points to no errors in the transcript that could have possibly misled the jury. Any discrepancies between the videotape and the transcript were exceedingly minor and the court allowed counsel to read corrections to the transcript to the jury.

Defendant's claims concerning deficiencies in the record lack merit.

*State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 140 (unpublished appendix).

Here, the Louisiana Supreme Court did not *explicitly* dismiss Claim 26 as waived pursuant to the contemporaneous objection rule. The Louisiana Supreme Court references Louisiana Code of Criminal Procedural Article 841 but does not conclude that the petitioner failed to comply with the article. Instead, the opinion is entirely based upon the petitioner's failure to show he was prejudiced by the alleged incomplete record. In fact, the record reflects that the petitioner filed a pretrial motion entitled *Motion for Complete Recordation of all Pretrial and Trial Proceedings*, in which he requested that all bench conferences and trial proceedings be

42

transcribed.[104] The trial transcript also reflects that counsel for the petitioner entered an objection as soon as he became aware that the bench conferences were not being transcribed by the court reporter.[105] Accordingly, Claim 26 is not barred by the independent and adequate state ground doctrine.

### *Certificate of Appealability*

Should the petitioner ultimately pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that the petitioner ultimately seeks to pursue an appeal in this case, a certificate of appealability should be denied as to any of the procedural rulings in this Report and Recommendation.

---

[104] R. Doc. 59-2, pp. 73-77.
[105] R. Doc. 60-5, pp. 54-56.

**<u>RECOMMENDATION</u>**

It is recommended that claims: 3(D), 6, 23, 27 & 28 be dismissed with prejudice as unexhausted and procedurally defaulted. It is further recommended that claims 3(D), 14(C), and 11(A) be dismissed as procedurally barred. It is further recommended that in the event the petitioner ultimately pursues an appeal in this case, a certificate of appealability be denied. It is further recommended that this matter be referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on November 3, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**