# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DANIEL JOSEPH BLANK (#416437)**             **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY**             **NO. 16-00366-BAJ-RLB**

## RULING AND ORDER

This is a death penalty case. Presently before the Court is Petitioner's timely **Motion For Review Of Magistrate Judge's Order Denying Discovery And Access To Evidence Of Actual Innocence (Doc. 82, the "Motion")**. Petitioner seeks reversal of the Magistrate Judge's November 3, 2021 Order (Doc. 79) denying Petitioner discovery related to known DNA and fingerprint evidence.[1] Petitioner argues that the proposed discovery, if allowed, will yield "critical exculpatory facts that trial counsel failed to investigate or present to [the] jury," and may establish his "actual innocence." (Doc. 82 at 13). Respondent Darrel Vannoy, Warden of the Louisiana State Penitentiary (hereinafter, the "State"), does not oppose Petitioner's Motion.

For the following reasons, Petitioner's Motion will be granted, the Magistrate Judge's November 3 Order will be vacated, and Petitioner shall be entitled to obtain discovery as set forth herein.

---

[1] Also on November 3, 2021, the Magistrate Judge issued a Report and Recommendation addressing the State's procedural objections to Petitioner's claims, and recommending dismissal of certain claims. (Doc. 78). Petitioner submitted a timely objection to the Magistrate Judge's Report and Recommendation. (Doc. 81). The Court will address the Magistrate Judge's Report and Petitioner's Objection in a separate Order.

I. BACKGROUND

A. Relevant Facts

The following facts are drawn from the Louisiana Supreme Court's April 11, 2007 opinion affirming Petitioner's conviction and sentence. *See State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90. These facts are abbreviated to include only those that are relevant to the instant discovery dispute.

On December 11, 1997, an Ascension Parish, Louisiana grand jury returned an indictment charging Petitioner with the first-degree murder of 71–year–old Lillian Philippe. The crime was brutal: On April 10, 1997, Ms. Philippe was beaten and stabbed to death in her own bedroom, following a botched burglary. Ms. Philippe's death was among a series of violent murders and attempted murders that occurred during home invasions in Louisiana's River Parishes between 1996 and 1997.

On September 2, 1999, after a change of venue, a Terrebonne Parish jury convicted Petitioner of Ms. Philippe's murder. Thereafter, the jury unanimously recommended a sentence of death, finding two aggravating circumstances: Petitioner was engaged in the perpetration of an aggravated burglary; and the victim was aged 65 years or older. The trial court accepted the jury's recommendation, and sentenced Petitioner to death.

At Petitioner's trial, the State's theory was that Petitioner robbed and murdered Ms. Philippe in pursuit of cash to fuel his gambling addiction. The State bolstered its case by presenting evidence implicating Petitioner in five additional River Parish home-invasions, which resulted in the murders of Victor Rossi, Joan Brock, Sam and Louella Arcuri, and Barbara Bourgeois, and the attempted murders

2

of Leonce and Joyce Millet. Yet, despite the violent nature of these crimes, and despite having collected voluminous forensic evidence (including fingerprints, hair samples, and DNA), the State could not produce *any* forensic evidence connecting Petitioner to *any* of the crime scenes. Instead, the State's case relied almost exclusively on Petitioner's video-taped confession to these crimes, which occurred on November 13, 1997, over the course of a 12-hour interrogation conducted in police custody, *without* an attorney present. *See Blank*, 955 So. 2d at 101 ("The state could not produce any forensic evidence placing [Petitioner] at the various crime scenes, so it relied almost entirely on the confession to prove defendant's guilt at trial.").

As it happens, not only was the State's forensic evidence inconclusive regarding Petitioner's involvement in the River Parish home invasions, multiple items were exculpatory. Such exculpatory evidence included: unidentified male DNA found on the baseball bat used to murder Victor Rossi; unidentified male DNA found under the fingernails of Sam Arcuri; and unidentified male and female DNA found on cigarette butts located at Joyce and Leonce Millet's home.

These DNA samples, recovered from three separate crime scenes, were analyzed as part of the State's attempt to corroborate Petitioner's confession. Significantly, the State's analysis ruled *out* a match to Petitioner. Petitioner's counsel obtained the *results* of the State's analysis, but did *not*, however, obtain the underlying data, or the unidentified DNA profiles generated from the DNA samples. This additional information would have enabled Petitioner's counsel to independently test whether the unidentified DNA profiles collected from the Rossi, Arcuri, and

3

Millet crime scenes matched each other (indicating a common perpetrator other than Petitioner), or, alternatively, matched other known DNA profiles in the FBI's CODIS database (again, indicating a perpetrator other than Petitioner). Either way, a match would have undermined Petitioner's confession, because it would have contradicted Petitioner's account that he alone committed all of the River Parish home invasions.

### B. Procedural History

After exhausting his state appeal and post-conviction remedies, Petitioner filed his original Petition For Writ Of Habeas Corpus under 28 U.S.C. § 2254 in this Court on May 3, 2017. (Doc. 12). The Petition asserts 28 claims for relief (*not* including sub-claims). Relevant here, Petitioner's claims include: ineffective assistance related to trial counsel's failure to develop and present available exculpatory forensic evidence contradicting his confession, specifically including the unidentified DNA samples discussed above, (*id.* at 183 (Claim 5)); ineffective assistance related to trial counsel's failure to investigate the circumstances surrounding the Rossi murder, particularly following discovery of unknown male DNA on the murder weapon (among various other discrepancies) (*id.* at 247 (Claim 6)); violations of *Brady v. Maryland*, 373 U.S. 83 (1963), based on the State's failure to turn over exculpatory forensic evidence undermining Petitioner's confession, including "as-yet unrevealed physical evidence and forensic analysis of physical evidence," (*id.* at 382, 422 (Claim 9)); and a due process violation related to the trial court's refusal to provide Petitioner additional time to develop forensic evidence contradicting his confession, and related expert testimony, (*id.* at 429 (Claim 10)).

In connection with these claims, and to excuse any procedural defaults,

Petitioner also asserts ineffective state post-conviction counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012),[2] and actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995).[3] (Doc. 12 at 51, 258).

Finally, the Petition specifically requests the opportunity to conduct independent "forensic testing of key pieces of forensic evidence, including the Rossi murder weapon, collected by law enforcement in the investigation of the Philippe murder and the 'other crimes' evidence used to convict and sentence [Petitioner] to death." (Doc. 12 at 259-60).

On October 7, 2019, Petitioner filed the three discovery motions at issue here. The first, titled Motion To Conduct Habeas Rule 6 Discovery (Doc. 27, the "DNA Data Motion"), seeks an order directing the FBI to produce the "DNA profiles and raw data" generated from the bat used to murder Mr. Rossi, the fingernail scrapings collected from Mr. Arcuri, and the cigarette butts collected from the Millet crime scene. (*See* Doc. 27-2 at 1). The second, titled Motion For The Transfer Of Evidence To Defense Expert Bode Technology (Doc. 28, the "Physical Evidence Motion"), seeks an order directing the State to produce the actual (physical) Rossi murder weapon, Arcuri fingernails, and Millet cigarette butts, for DNA testing and analysis by Petitioner's DNA expert, Bode Technology. (*See* Doc. 28-3). The third, titled Motion To Transfer

---

[2] Under *Martinez v. Ryan*, a claim of ineffective assistance of post-conviction counsel may serve as cause to excuse the procedural default of a claim related to trial counsel's ineffectiveness. *Martinez*, 566 U.S. at 9.

[3] Under *Schlup v. Delo*, a petitioner's "actual innocence" may serve as a gateway to bypass a procedural bar so that a constitutional claim may be heard, in order to avoid a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 315. "Actual innocence" in this context means "factual innocence, not mere legal insufficiency." *Bousley v United States*, 523 U.S. 614, 623 (1998).

5

Fingerprint Evidence For Defense Expert Evaluation (Doc. 29, the "Fingerprint Motion"), seeks an order directing the State to produce a subset of the fingerprint evidence collected from each of the various crime scenes for examination and analysis by Petitioner's fingerprint expert, Max L. Jarrell. (Doc. 29-3).

The State filed an untimely and perfunctory (two-page) opposition to the DNA Data Motion. (Doc. 43). The State offered no opposition whatsoever to the Physical Evidence Motion *or* the Fingerprint Motion.

On November 3, 2020, the Magistrate Judge issued a single order denying the DNA Data Motion, the Physical Evidence Motion, *and* the Fingerprint Motion. (Doc. 79). The Magistrate Judge considered the DNA Data Motion and the Physical Evidence Motion in tandem, despite acknowledging that these motions seek distinct items of discovery (raw data versus underlying physical evidence). First, the Magistrate Judge determined that Petitioner cannot show "good cause" to obtain DNA discovery related to the Rossi murder weapon because such evidence relates only to one substantive claim asserted in the Petition—ineffective assistance related to trial counsel's failure to investigate the Rossi murder (Claim 6)—and this claim fails on the merits.[4] (Doc. 79 at 3). Further, because this claim fails on the merits, Petitioner also cannot show good cause to obtain this evidence to pursue his "gateway claims" under *Martinez* and *Schlup*. (*Id.* at 3-4).

Second, the Magistrate Judge determined that Petitioner cannot show good

---

[4] As indicated above, *supra* n.1, the Magistrate Judge's analysis of Claim 6 appears in the November 3, 2021 Report and Recommendation. (Doc. 78). The Court will address this analysis in a separate Order.

6

cause to obtain DNA discovery related to the Arcuri and Millet crime scenes because the Petition "does not include any allegation that counsel was ineffective with respect to the Arcuri fingernail scrapings or the Millet cigarette butts." (Doc. 79 at 4). Thus, any DNA discovery related to these items "is the type of 'fishing expedition' specifically prohibited in habeas cases." (*Id.* at 5).

Third, the Magistrate Judge separately denied the Fingerprint Motion determining that Petitioner cannot show good cause to obtain additional fingerprint evidence because "[t]he petition does not include a claim alleging that the petitioner's counsel was ineffective for failing to obtain an independent fingerprint expert," and, thus, "petitioner is seeking discovery in order to support a claim that has not been raised and is not before the Court." (Doc. 79 at 6).

The November 3 Order does not address whether the requested discovery relates to additional claims raised in the Petition, including ineffective assistance based on counsel's failure to develop exculpatory forensic evidence to undermine Petitioner's confession (Claim 5); whether the State violated *Brady* by failing to produce the DNA profiles and raw data excluding Petitioner (Claim 9); and whether the trial court violated due process by refusing to grant Petitioner a continuance to develop DNA evidence refuting his confession (Claim 10).

On November 17, 2020, Petitioner timely filed the instant Motion, seeking reversal of the Magistrate Judge's November 3 Order. (Doc. 82).

The State has not responded to Petitioner's Motion.

## II. ANALYSIS

### A. Standard

Rule 72 provides that a magistrate judge may hear and decide pretrial matters that are not dispositive of a party's claim. Fed. R. Civ. P. 72(a). A party may object to a magistrate judge's order, but must do so within 14 days or risk waiver. *Id.* "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

> Under the 'clearly erroneous' standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. Rather, the 'clearly erroneous' standard requires that the district court affirm the decision of the magistrate judge unless on the entire evidence the court is left with a definite and firm conviction that a mistake has been committed. Similarly, a magistrate judge's order is 'contrary to law' only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure.

*Leonard v. Martin*, No. 19-cv-00827, 2021 WL 3201369, at *1 (M.D. La. July 28, 2021) (Jackson, J.) (quoting *Ordemann v. Unidentified Party*, No. 06-cv-4796, 2008 WL 695253, at *1 (E.D. La. Mar. 12, 2008)).

### B. Discussion

Petitioner's Motion raises two objections: first, that the November 3 Order is premature because it is inconsistent with the Court's July 21, 2020 Case Management Order, which reserves rulings on discovery issues for *after* the Court has addressed the State's procedural objections, (Doc. 82 at 8); and second, that good cause exists to allow discovery under Rule 6, and denying discovery is inconsistent

8

with U.S. Supreme Court precedent, (*id.* at 9-22).[5] Petitioner's second argument is dispositive, and therefore the Court does not address the issue of whether the November 3 Order is premature.

Rule 6(a) of the Federal Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(b) states that "[a] party requesting discovery must provide reasons for the request." Rule 6 embodies the "good cause" standard set forth in *Harris v. Nelson*, where the Supreme Court instructed that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. 286, 300 (1969).

Importantly, under Rule 6, the petitioner need *not* show that his discovery request will ultimately produce evidence sufficient to *prove* his claims for relief; rather, the petitioner need only make a "sufficient showing" of "additional evidence … that lends support to his claim[s]," based on "the facts of [the] particular case." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (district court abused discretion by denying additionally discovery regarding issues of judicial bias in capital habeas case, where petitioner presented "specific allegations" that his trial attorney "may

---

[5] Petitioner's objections actually proceed in three parts: first, the Magistrate Judge's November 3 Order is premature; second, denying the requested discovery is inconsistent with U.S. Supreme Court precedent; and third, that good cause exists for the requested discovery. (Doc. 82 at 8-22). Petitioner's second and third objections, however, are two sides of the same coin, and the Court treats them as one.

9

have agreed to take [his] capital case to trial quickly" to deflect suspicion of corruption in other cases). "Additionally, a petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery under Rule 6." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (quotation marks and citations omitted).

In capital cases, Rule 6 discovery is particularly appropriate for the development of exculpatory DNA evidence. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009) (Rule 6 permits discovery upon showing of good cause that DNA evidence supports "a federal actual innocence claim"); *Neal v. Vannoy*, No. 15-cv-5390, 2021 WL 1212663, at *5 (E.D. La. Mar. 30, 2021) (Jolivette Brown, C.J.) (district court granted leave to conduct DNA testing of evidence retained by the Jefferson Parish Sheriff's Office Crime Lab where proposed DNA evidence supported petitioner's gateway claims of actual innocence and ineffective assistance of trial and post-conviction counsel, and violations of *Brady v. Maryland*); *Code v. Cain*, No. 11-cv-1804 (W.D. La. July 16, 2018) (Hicks, C.J.) (district court granted leave to conduct independent forensic testing of "all physical evidence"—including hair samples and latent prints—collected from nine murder investigations).

Applying these principles to the facts of this case, the Court determines that Petitioner is entitled to the limited discovery he seeks. Critically, this is a confession case. A criminal confession is the most potent of all evidence, and possibly the most susceptible to abuse. *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("A confession is like no other evidence. Indeed, the defendant's own confession is probably the most

probative and damaging evidence that can be admitted against him. The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have [a] profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so. While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision." (quotation marks, alterations, and citations omitted)). "Confession evidence (regardless of how it was obtained) is so biasing that juries will convict on the basis of confession alone, even when no significant or credible evidence confirms the disputed confession and considerable significant and credible evidence disconfirms it." *Murray v. Earle*, 405 F.3d 278, 295 (5th Cir. 2005). To repeat, *no* forensic evidence connected Petitioner to the crime of conviction, or *any* of the other murders and attempted murders to which Petitioner confessed. *Blank*, 955 So. 2d at 101 ("The state could not produce any forensic evidence placing him at the various crime scenes, so it relied almost entirely on the confession to prove defendant's guilt at trial."). The State's prosecution rises (and falls) depending on the reliability of Petitioner's confession. Accordingly, *any* evidence that undermines Petitioner's confession is exculpatory—especially including DNA and fingerprint evidence that excludes Petitioner as a possible match—because it supports Petitioner's assertions that his confession was false. *See Floyd v. Vannoy*, 894 F.3d 143, 155–56 (5th Cir.

11

2018) ("In other words, newly-discovered evidence further and conclusively exculpating Floyd of Robinson's murder—undermining both confessions—is relevant to his actual-innocence claim because it supports Floyd's assertions [that] his confessions were false.").

Here, Petitioner has tailored his discovery requests and explained his need for the requested items. He seeks only *known* exculpatory evidence—specifically, (1) the "DNA profiles and raw data" generated from the Rossi, Arcuri, Millet crime scenes; (2) the bat used to murder Mr. Rossi, the fingernail scrapings collected from Mr. Arcuri, and the cigarette butts collected from the Millet crime scene; and (3) and a specific subset of fingerprint evidence. He seeks this evidence to conduct additional analysis aimed to identify an alternative culprit, thereby impeaching his confession—the *only* evidence establishing his guilt.

Necessarily, this evidence lends support to multiple substantive claims raised in the Petition. Obviously, it is relevant to Claim 5, which alleges ineffective assistance based on counsel's failure to develop exculpatory evidence to challenge the reliability of Petitioner's confession. *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986) ("Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be insufficiently corroborated or otherwise unworthy of belief. … Accordingly, … a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.").

Likewise, it is relevant to Claim 6, which alleges ineffective assistance based

12

on counsel's failure to investigate the Rossi murder, particularly after discovery of the unidentified male DNA profile on the murder weapon (among other discrepancies). *See Rompilla v. Beard*, 545 U.S. 374, 387 (2005) ("It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty." (quoting 1 ABA Standards for Criminal Justice 4–4.1 (2d ed. 1982 Supp.)).

It is also relevant to Claim 9, Petitioner's *Brady* claim, because the DNA profile and raw data *exclude* Petitioner as a match, thereby indicating the involvement of a separate perpetrator, and suggesting Petitioner's actual innocence. *See Kyles v. Whitley*, 514 U.S. 419, 421 (1995) ("the state's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose evidence favorable to the defense, turns on the cumulative effect of all such evidence suppressed by the government"); *Neal*, 2021 WL 1212663, at *5 (district court granted leave to conduct DNA testing of evidence retained by the Jefferson Parish Sheriff's Office Crime Lab where proposed DNA evidence supported petitioner's gateway claims of actual innocence and ineffective assistance of trial and post-conviction counsel, and violations of *Brady v. Maryland*); *Code*, No. 11-cv-1804 (W.D. La. July 16, 2018) (district court granted leave to conduct independent forensic testing of "all physical evidence"—including hair samples and

13

latent prints—collected from nine murder investigations).

Finally, it is relevant to Claim 10, which alleges a violation of due process based on the trial court's refusal to grant a continuance to allow development of forensic evidence and expert testimony to challenge Petitioner's confession. *Hicks v. Wainwright*, 633 F.2d 1146, 1147 (5th Cir. 1981) ("[T]he denial of a continuance in this case prevented petitioner from presenting his only expert witness on his insanity defense, the sole issue at trial, and deprived petitioner of his right to due process.")

Additionally, such evidence is plainly relevant to Petitioner's "gateway claims" of ineffective state post-conviction counsel under *Martinez*, and "actual innocence" under *Schlup*, which, if proved, may excuse Petitioner's failure to raise certain claims in his state post-conviction proceedings (including Claim 6). *See Martinez*, 566 U.S. at 9 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); *Floyd*, 894 F.3d at 155–56 (fingerprint-comparison results and DNA-test results undermined Petitioner's confession to two murders and established *Schlup* "actual innocence" gateway claim).

The Magistrate Judge determined otherwise, and denied each of Petitioner's discovery motions. In doing so, the Magistrate Judge erred by limiting the analysis to *only* whether Petitioner's proposed discovery related to Claim 6, or to free-standing claims of ineffective assistance based on counsel's failure to investigate "the Arcuri fingernail scrapings or the Millet cigarette butts," and counsel's failure to obtain "an independent fingerprint expert." (Doc. 79 at 4-6). This analysis is too constrained

14

because it does not take into account the potential impact of the proposed discovery on the additional claims outlined above. *See Leonard*, 2021 WL 3201369, at *1 ("[A] magistrate judge's order is 'contrary to law' … if it fails to apply … relevant statutes, case law, or rules of procedure."); *e.g.*, *Rosales v. Lore*, 149 F. App'x 245, 247 (5th Cir. 2005) (vacating dismissal and reinstating plaintiff's claims where magistrate judge failed to address relevant authority when rendering decision).

In sum, on this record, the Court is satisfied that Petitioner is entitled to the discovery he seeks in order to develop his potentially meritorious claims. Petitioner's factual allegations are specific, *Murphy*, 205 F.3d at 814, and the requested items will plainly lend support to his claims. *Bracy*, 520 U.S. at 909. Further, the requested DNA evidence will increase the reliability of these proceedings, thereby fulfilling the Court's constitutional duty to ensure "a greater degree of accuracy and factfinding than would be [required] in a noncapital case." *Gilmore v. Taylor*, 508 U.S. 333, 342, (1993) (citing authorities).

### III.    CONCLUSION

Petitioner was convicted solely on the strength of his confession. Any evidence that undermines his confession is exculpatory. Petitioner has discretely identified additional exculpatory DNA and fingerprint evidence that lends support to his claims based on the facts of this particular case, and has therefore shown good cause for the discovery he seeks. *Bracy,* 520 U.S. at 909. Moreover, the State has failed to

meaningfully oppose *any* of the discovery Petitioner requests.[6]

Accordingly,

**IT IS ORDERED** that Petitioner's unopposed **Motion For Review Of Magistrate Judge's Order Denying Discovery And Access To Evidence Of Actual Innocence (Doc. 82)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's **November 3, 2021 Order (Doc. 79)** be and is hereby **VACATED**.

**IT IS FURTHER ORDERED** that **Petitioner's Motion To Conduct Habeas Rule 6 Discovery (Doc. 27)** be and is hereby **GRANTED**. On or before September 27, 2021, the Federal Bureau of Investigation shall produce to Petitioner the DNA profiles and raw data generated from the following specimens, consistent with the subpoena duces tecum issued in conjunction with this Order:

| Description | Laboratory No. | Specimen No. |
| --- | --- | --- |
| Bat collected from scene of Victor Rossi's homicide | No. 980921048 S HE GX | Q5 |
| Fingernail scrapings collected from homicide victim Salvador Arcuri | No. 980921051 S HE GX<br>No. 70821030 S HE GX | Q159.1 |
| Cigarette Butts collected from scene of Millet attempted homicide | No. 980921053 S HE GX<br>No. 70924019 S HE GX | Q8-Q16 |

**IT IS FURTHER ORDERED** that Petitioner's **Motion For The Transfer Of Evidence To Defense Expert Bode Technology (Doc. 28)** be and is hereby **GRANTED**. On or before September 27, 2021, the State shall produce and transfer

---

[6] Again, the State does not oppose Petitioner's instant Motion, has never opposed the Physical Evidence Motion or the Fingerprint Motion, and has submitted only the most perfunctory opposition to the DNA Data Motion. (*See* Doc. 43).

16

the following items collected in the case of *State of Louisiana v. Daniel Blank*, No. 10-677:

| Description | Agency Identification Nos. | Last Known Custodian |
|---|---|---|
| Bat collected from scene of Victor Rossi's homicide | APSO: Ex. 11, 11C-2<br>APSO TRAQ Barcode # APSD05439<br>LSPCL: SP9568-96 #11<br>FBI Lab: 980921048 S HE GX (6/14/99, Q5)<br>State Exhibit: S-103 | Terrebonne Parish Clerk of Court<br>Attn: Theresa A. Robichaux, Clerk of Court<br>7856 Main Street<br>Houma, LA 70360<br>Ph.: 985-868-5660 |
| Fingernail scrapings collected from homicide victim Salvador Arcuri | SJBPSO: Ex. 29<br>LSPCL: SP4429-97 #29<br>FBI Lab: 70821030 S HE GX & 980921051 S HE GX (6/14/66, Q159.1) | St. John the Baptist Sheriff's Office<br>Attn: Major Larry LeBlanc<br>Criminal Investigations Division<br>1801 W. Airline Hwy.<br>Laplace, LA 70068<br>Ph.: 985-359-8769 |
| Cigarette Butts collected from scene of Millet attempted homicide | APSO Ex. 26A – 26I<br>APSO TRAQ Barcode #APSD06094<br>APSO TRAQ Barcode #APSD09564<br>FBI Lab: 70924019 S HE GX (6/14/99, Q8, Q9, Q10, Q11, Q12, Q13, Q14, Q15, Q16) | Ascension Parish Sheriff's Office District 2 Sub-Station<br>13192 Airline Highway<br>Gonzales, LA 70737<br>Ph.: 225-621-8300 |

The State shall ship the foregoing items via Federal Express to:

Bode Cellmark Technology ("Bode Technology")
10430 Furnace Road, Suite 107
Lorton, Virginia 22079
Tel. (703) 646 9740

for the purpose of DNA examination and analysis. If, in the scientific judgment of Bode Technology, any probative unknown DNA profile is obtained from testing of the submitted evidence, Bode Technology will submit such profile(s) to the Combined

DNA Index System (CODIS) database, pursuant to the requirements and restrictions of the Federal Bureau of Investigation for CODIS submission. In performing its examination and analysis, Bode Technology shall endeavor to avoid the complete consumption of any samples. Following completion of its analysis, Bode Technology shall promptly notify the State and shall make arrangements to return the evidence via Federal Express.

**IT IS FURTHER ORDERED** that Petitioner's **Motion To Transfer Fingerprint Evidence For Defense Expert Evaluation (Doc. 29)** be and is hereby **GRANTED**. On or before September 27, 2021 the State shall produce and transfer the following items collected in the case of *State of Louisiana v. Daniel Blank*, No. 10-677:

| Case | Agency Exhibit No. | Description | Last Known Custodian |
|---|---|---|---|
| Philippe | Gonzales Police Department "GPD") Ex. 1 | One envelope containing 29 latent lifts from various areas | GPD or Louisiana State Police ("LSP") |
| Philippe | GPD Ex. 4 | One envelope containing 4 latent lifts from the air conditioning unit | GPD or LSP |
| Philippe | GPD Ex. 8 | 1 latent lift from remote alarm unit from master bedroom (latent lift taken from Ex. 8) | GPD or LSP |
| Philippe | GPD Ex. 14; State Exhibit S-41 | 14 latent lifts from pieces of trophy from master bedroom (latent lifts taken from Ex. 14) | GPD or LSP |
| Rossi | Ascension Parish Sheriff's Office | Original 9 x 12 clasp envelope containing | APSO or LSP |

18

| | | | |
|---|---|---|---|
| | ("APSO") Ex. 3; APSO TRAQ #APSD05441 | hand printing "You can Fuck that Bitch But you will not Fuck me no more I hope you die two timing Bitch" (latent lifts taken from this item) | |
| Rossi | APSO Ex. 5; APSO TRAQ #APSD05447 APSD09565, or APSD09568; LSP SP9568-96 #5 | One knife (latent lifts taken from this item) | APSO or LSP |
| Millet | APSO Ex. 1; possibly APSO TRAQ #APSD05825 or #APSD36690; LSP SP5916-97 #1 | 6 latent lifts taken from 1 midnight blue 4 door Cadillac 32V Northstar STS, La. License No. EVH 440 (latent lifts taken from Ex. 1) | APSO or LSP |
| Millet | APSO Ex. 2; LSP SP5916-97 #2 | 14 latent lifts collected from scene at victims' residence, 42374 Weber City Rd, Gonzales, LA | APSO or LSP |
| Brock | St. John the Baptist Parish Sheriff's Office ("SJBPSO") Ex. 130; LSP Ex. 1 | One broken set of light bulbs in clear plastic wrapping, also described as one cardboard box containing a package of broken fluorescent light bulbs (latent lifts taken from this item) | SJBPSO or LSP |
| Arcuri | SJBPSO Ex. 113; Federal Bureau of Investigation Laboratory 70821030 S HE GX | 9 latent lifts from vacuum, kitchen sink, kitchen, gold mirror | SJBPSO or LSP |

19

| | & 980921051 S HE GX (6/14/66, Q14-Q22) | | |
|---|---|---|---|
| Arcuri | SJBPSO Ex. 138 (possibly LSP SP97-15291 Ex. 1 or 9) | One brass frame mirror (latent lifts taken from this item) | SJBPSO or LSP |
| Bourgeois | St. James Parish Sheriff's Office ("SJPSO") Ex. 42 | One needle nose cutting pliers (latent lifts taken from this item) | SJPSO or LSP |
| Bourgeois | SJPSO Ex. 1 | 8 latent lifts from crime scene | SJPSO or LSP |

The State shall ship the foregoing items via Federal Express to:

Max L. Jarrell, CLPE
209 South Jefferson Street
Suite 1088
Winchester, TN 37398
Telephone: (931) 455-8989

for the purpose of examination and analysis. Following completion of his analysis, Mr. Jarrell shall promptly notify the State and shall make arrangements to return the evidence via Federal Express.

Baton Rouge, Louisiana, this 13th day of September, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**