## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DANIEL JOSEPH BLANK (#416437)**                    **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY**                                **NO. 16-00366-BAJ-RLB**

## RULING AND ORDER

This is a death penalty case. Presently before the Court is the **Magistrate Judge's Report and Recommendation (Doc. 78, the "R&R")**, addressing procedural objections submitted by Respondent Darrel Vannoy, Warden of the Louisiana State Penitentiary (hereinafter, the "State"). The R&R recommends that certain of the State's procedural objections be overruled, and that others be sustained. The R&R also raises a *sua sponte* procedural objection to one of Petitioner's claims. In sum, the R&R recommends dismissal of Plaintiffs' claims 3(D), 6, 11(A), 14(C), 23, 27 and 28. The R&R further recommends that a certificate of appealability be denied should Petitioner ultimately pursue an appeal.

The State does not object to the R&R; Petitioner objects to those portions that recommend dismissal of his claims. (Doc. 81). The R&R will be adopted *in part*, as set forth herein.

### I.    Background

#### A. Relevant Facts

The following facts are drawn from the Louisiana Supreme Court's April 11, 2007 opinion affirming Petitioner's conviction and sentence. *See State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90. These facts are abbreviated to include only those

that are relevant to the State's procedural objections.

On December 11, 1997, an Ascension Parish, Louisiana grand jury returned an indictment charging Petitioner with the first-degree murder of 71–year–old Lillian Philippe. The crime was brutal: On April 10, 1997, Ms. Philippe was beaten and stabbed to death in her own bedroom, following a botched burglary. Ms. Philippe's death was among a series of violent murders and attempted murders that occurred during home invasions in Louisiana's River Parishes between 1996 and 1997.

On September 2, 1999, after a change of venue, a Terrebonne Parish jury convicted Petitioner of Ms. Philippe's murder. Thereafter, the jury unanimously recommended a sentence of death, finding two aggravating circumstances: Petitioner was engaged in the perpetration of an aggravated burglary; and the victim was aged 65 years or older. The trial court accepted the jury's recommendation, and sentenced Petitioner to death.

At Petitioner's trial, the State's theory was that Petitioner robbed and murdered Ms. Philippe in pursuit of cash to fuel his gambling addiction. The State bolstered its case by presenting evidence implicating Petitioner in five additional River Parish home-invasions, which resulted in the murders of Victor Rossi, Joan Brock, Sam and Louella Arcuri, and Barbara Bourgeois, and the attempted murders of Leonce and Joyce Millet. Yet, despite the violent nature of these crimes, and despite having collected voluminous forensic evidence (including DNA, fingerprints, and hair samples), the State could not produce *any* forensic evidence connecting Petitioner to *any* of the crime scenes. Instead, the State's case relied almost exclusively on

Petitioner's video-taped confession to these crimes, which occurred on November 13, 1997, over the course of a 12-hour interrogation conducted in police custody, *without* an attorney present. See Blank, 955 So. 2d at 101 ("The state could not produce any forensic evidence placing [Petitioner] at the various crime scenes, so it relied almost entirely on the confession to prove defendant's guilt at trial.").

As it happens, not only was the State's forensic evidence inconclusive regarding Petitioner's involvement in the River Parish home invasions, multiple items were exculpatory. Such exculpatory evidence included: unidentified male DNA found on the baseball bat used to murder Victor Rossi; unidentified male DNA found under the fingernails of Sam Arcuri; and unidentified male and female DNA found on cigarette butts located at Joyce and Leonce Millet's home.

These DNA samples, recovered from three separate crime scenes, were analyzed as part of the State's attempt to corroborate Petitioner's confession. Significantly, the State's analysis ruled *out* a match to Petitioner. Petitioner's counsel obtained the results of the State's analysis, but did *not* obtain the underlying data, or the unidentified DNA profiles generated from the DNA samples. This additional information may have enabled Petitioner's counsel to independently test whether the unidentified DNA profiles collected from the Rossi, Arcuri, and Millet crime scenes matched each other (indicating a common perpetrator other than Petitioner), or, alternatively, matched other known DNA profiles in the FBI's CODIS[1] database

---

[1] CODIS is the acronym for the Combined DNA Index System, and is the generic term used to describe the FBI's program of support for criminal justice DNA databases, as well as the software used to run these databases. *See* https://www.fbi.gov/services/laboratory/biometric-analysis/codis/codis-and-ndis-fact-sheet (last visited September 14, 2021).

(again, indicating a perpetrator other than Petitioner). Either way, a match would have undermined Petitioner's confession, because it would have contradicted Petitioner's account that he alone committed the River Parish home invasions.

###    B.    Procedural History

After exhausting his state appeal and post-conviction remedies, Petitioner filed his original Petition For Writ Of Habeas Corpus under 28 U.S.C. § 2254 in this Court on May 3, 2017. (Doc. 12). The Petition asserts 28 claims for relief (*not* including sub-claims). Relevant here, Petitioner's claims include:

- Claim 1(A)(2): Petitioner's intellectual and cognitive deficits vitiated the voluntariness of his confession (Doc. 12 at 75-80);

- Claim 3(D): The trial court charged the jury with an instruction that failed to properly limit the use of the "other crimes" evidence, leaving the jurors with inadequate guidance (*id.* at 150-51);

- Claim 6: Trial counsel was ineffective for having failed to investigate the circumstances surrounding the Rossi murder, particularly following discovery of unknown male DNA on the murder weapon (among various other discrepancies) (*id.* at 247-60);

- Claim 11(A): Two jurors in the venire should have been excused for cause because voir dire questioning revealed that they would impose the death penalty regardless of mitigating circumstances (*id.* at 444-47);

- Claim 14(C): The trial court's reasonable doubt instruction minimized the State's burden of proof (*id.* at 503);

- Claim 16: The trial court erred in failing to grant Petitioner's second and third motions for a change of venue (*id.* at 516-33);

- Claim 23: Louisiana's death penalty statute is unconstitutional because it fails to properly narrow the class of offenders eligible for the death penalty (*id.* at 562-77);

- Claim 24: Trial counsel was ineffective for failing to quash the bill of information after the grand jury foreperson was selected in a discriminatory manner (*id.* at 577-81);

- **Claim 26**: Petitioner's due process rights were violated by the court reporter's failure to transcribe all sidebars and bench conferences conducted at trial (*id.* at 586-89);

- **Claim 27**: Petitioner's death penalty sentence violates international human rights law and customary international law (*id.* at 589-607); and

- **Claim 28**: Petitioner's death sentence is unconstitutional because he is mentally ill (*id.* at 607-620).

In connection with these claims, and to excuse any procedural defaults, the Petition also asserts "gateway claims" of ineffective state post-conviction counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012), and "actual innocence" under *Schlup v. Delo*, 513 U.S. 298 (1995). (Doc. 12 at 51, 258).

Finally, the Petition specifically requests the opportunity to conduct independent "forensic testing of key pieces of forensic evidence, including the Rossi murder weapon, collected by law enforcement in the investigation of the Philippe murder and the 'other crimes' evidence used to convict and sentence [Petitioner] to death." (Doc. 12 at 259-60).

On November 7, 2019, the State filed a perfunctory Answer, asserting various procedural objections to Petitioner's claims. (Doc. 30). Thereafter, on January 6, 2020, the State submitted a memorandum elaborating on its procedural objections. (Doc. 41). In no particular order, the State argues that claims 1(A)(2), 6, 23, 27, and 28 are not exhausted, and that claims 3(D), 11(A), 14(C), 16, 24, and 26 are barred by independent and adequate state law grounds. (*See generally id.*).

On September 25, 2020, Petitioner submitted his opposition to the State's procedural objections. (Docs. 70, 73). The State did not file a reply to Petitioner's opposition.

On November 3, 2020, the Magistrate Judge issued the R&R currently under review. (Doc. 78). The R&R recommends that the State's objections to claims 1(A)(2), 16, 24, and 26 be overruled, and that these claims be allowed to proceed. The R&R further recommends that the State's objections to claims 3(D), 6, 11(A), 14(C), 23, 27 and 28 be sustained, and that these claims be dismissed with prejudice.

The State does not object to the R&R; Petitioner objects to those portions that recommend dismissal of his claims. (Doc. 81).

For reasons to follow, the R&R will be adopted *in part*.

## II. Without objection, the Court adopts the R&R's recommendations regarding claims 1(A)(2), 16, 24, and 26

As an initial matter, the R&R recommends *overruling* the State's procedural objections to claims 1(A)(2), 16, 24, and 26, and allowing these claims to proceed to judgment on the merits. (*See* Doc. 78 at pp. 10, 37-43). The State offers no objection.

Having carefully considered the matter, and in the absence of any objection, the Court **APPROVES** the R&R's analysis of claims 1(A)(2), 16, 24, and 26, and **ADOPTS** that analysis as the Court's opinion herein. Claims 1(A)(2), 16, 24, and 26 are not barred and will be allowed to proceed to judgment on the merits.

## III. The Court will not adopt the R&R's remaining recommendations

As indicated above, Petitioner objects to the remaining recommendations set forth in the R&R, contending that claims 3(D), 6, 11(A), 14(C), 23, 27 and 28 should all proceed. The Court considers Petitioner's arguments as they are set forth in Petitioner's brief. In conducting this analysis, the Court is mindful of its constitutional duty to ensure "a greater degree of accuracy and factfinding than would

be [required] in a noncapital case." *Gilmore v. Taylor*, 508 U.S. 333, 342, (1993) (citing authorities).

### A. Claim 6

Again, claim 6 asserts that trial counsel was ineffective for having failed to investigate the circumstances surrounding the Rossi murder, particularly following discovery of unknown male DNA on the murder weapon. The R&R recommends that claim 6 be dismissed because it was not raised in Petitioner's state post-conviction proceedings, and is therefore not exhausted. (Doc. 12 at 13-27). Petitioner objects, asserting that his failure to present claim 6 in his state post-conviction proceedings is the result of ineffective assistance of state post-conviction counsel, and is therefore excused under *Martinez v. Ryan. See Martinez*, 566 U.S. at 9 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). Alternatively, Petitioner asserts that his default is excused by his "actual innocence," as set forth in *Schlup v. Delo. E.g.*, *Floyd v. Vannoy*, 894 F.3d 143, 155–56 (5th Cir. 2018) (fingerprint-comparison results and DNA-test results undermined Petitioner's confession to two murders and established *Schlup* "actual innocence" gateway claim).

Separately, the Court has issued a discovery order permitting Petitioner to obtain discovery related to claim 6—specifically, the baseball bat used to murder Mr. Rossi (for independent DNA analysis), and the unidentified male DNA profile (and raw data) already collected from the same (for comparison to other known and unknown DNA profiles). (Doc. 101). Petitioner has established that this discovery is warranted by good cause, and is relevant to his "gateway claims" under *Martinez* and

7

*Schlup* (which, if proved, may excuse Petitioner's failure to raise claim 6 in his state post-conviction proceedings). (*Id.* at 10-14). Consistent with the Court's discovery order, the Court declines to adopt the R&R's recommendation regarding claim 6, so that Petitioner may develop evidence in support of this potentially meritorious claim.

The State's procedural objection to claim 6 is overruled.

### B. Claim 3(D)

Claim 3D asserts that the trial court charged the jury with an instruction that expanded the proper use of the "other crimes" evidence—specifically, the five additional home invasions resulting in the murders of Victor Rossi, Joan Brock, Sam and Louella Arcuri, and Barbara Bourgeois, and the attempted murders of Leonce and Joyce Millet—leaving the jurors with inadequate guidance. The R&R recommends that this claim is barred for two reasons: first, it is not exhausted because Petitioner did not make "a federal law argument" when he raised the claim on direct appeal to the Louisiana Supreme Court, (Doc. 12 at 11-12)[2]; second, it is defaulted because the Louisiana Supreme Court's adjudication relies on an adequate and independent state law ground, specifically Petitioner's failure to object to the instruction at trial, (*id.* at 32-35). Petitioner objects to each finding.

As to exhaustion, Petitioner argues that the "Louisiana Supreme Court was amply alerted to the federal implications of claim 3(D)" because he referenced the "Fifth, Sixth, and Fourteenth Amendments to the United States Constitution . . . in a prefatory section … which applied to all subsequent subclaims." (Doc. 81 at 20). The

---

[2] As noted in the R&R, the State did *not* raise this objection. Rather, the R&R raised the issue *sua sponte*. (Doc. 78 at 2 n.7).

Court agrees. Exhaustion under 28 U.S.C. § 2254(b)(1) requires "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks and citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court … thereby alerting that court to the federal nature of the claim." *Id.* This is not a high bar, and may be accomplished in *at least* the following ways:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Id.* at 32.

Petitioner squarely presented claim 3D to the Louisiana Supreme Court in his opening brief on direct appeal, at section II, subsection E. (Doc. 13-2 at 315). Section II begins with a heading, stating: "The Introduction Of Five Other Capital Murders And Two Attempted Murders Violated Mr. Blank's Presumption. Of Innocence, Destroyed His Right To A Fair Trial, And Removed The Process Due According To Law." (*Id.* at 305). Three prefatory paragraphs follow immediately thereafter. (*Id.* at 305-08). The last of these prefatory paragraphs concludes: "The introduction of the vast amount of other crimes evidence, to rebut a defense that appellant neither affirmatively endorsed nor offered evidence to support, violated Mr. Blank's presumption of innocence, right to a fair trial, and due process of law. U.S. Const. Amend. V, VI, XIV." (*Id.* at 308). This prefatory statement—and its specific citation to federal law—applies to all following subsections, including subsection E ("The Trial

9

Court Failed to Give the Proper Limiting Instruction"). As such, the Louisiana Supreme Court was adequately "alerted" to the federal nature of Petitioner's claim. *Baldwin*, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies … .").

As to default, Petitioner objects that even if the Louisiana Supreme Court initially acknowledged trial counsel's failure to raise a contemporaneous objection, it ultimately adjudicated the claim on the merits, thereby removing the state procedural bar. (Doc. 81 at 20-21). Again, the Court agrees. Under the "plain statement" rule, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Here, the Louisiana Supreme Court did not "clearly and expressly" state that its adjudication of Petitioner's claim rested on a state procedural bar. Rather, the Louisiana Supreme Court determined "[a]s an initial matter" that Petitioner "did not object to the charge … and thus waived the claim," and immediately thereafter engaged in the following merits analysis:

> In any event, arguably, the court should have instructed the jury that it could only consider the other crimes evidence to prove intent, lack of accident or mistake. See Louisiana Judges' Criminal Bench Book § 5.04 (suggesting that the court instruct the jury that it may consider the crimes evidence for the "sole purpose" of whether it tends to show "purpose for which the court has admitted the evidence, e.g., to show guilty knowledge, absence of mistake or accident, intent, system, motive or identity."). However, in the state's closing, the prosecutor argued

forcefully that the "limited purpose" of the crimes evidence was "to show either the intent of the [d]efendant, absence of a mistake on the part of the [d]efendant, or absence of an accident on the part of the [d]efendant." Given the entirely speculative nature of the claim concerning jurors possibly misinterpreting the instruction, this claim lacks merit.

*Blank*, 955 So. 2d at 127 n.27.

The Louisiana Supreme Court's two-step analysis results in ambiguity regarding the basis of its decision. The U.S. Supreme Court faced the *same* ambiguity in *Harris v. Reed*, the origin of the "plain statement" rule cited above. In *Harris*, the Appellate Court of Illinois determined that the petitioner had waived his ineffective assistance of counsel claim by failing to raise it on direct appeal, expressly stating "those issues which could have been presented on direct appeal, but were not, are considered waived." *Harris*, 489 U.S. at 258 (alterations omitted). The Illinois Court, however, went on to consider and reject the petitioner's ineffective-assistance claim on its merits. *Id.* The U.S. Supreme Court granted certiorari, applied the "plain statement" rule, and concluded "the Illinois Appellate Court did not 'clearly and expressly' rely on waiver as a ground for rejecting any aspect of petitioner's ineffective-assistance-of-counsel claim"—thereby opening the door to federal review—because the Illinois Court's observation that the petitioner's claim "could have been raised on direct appeal" fell "short of an explicit reliance on a state-law ground." *Id.* at 266. Explaining further, the Supreme Court stated:

> While it perhaps could be argued that this statement would have sufficed had the state court never reached the federal claim, the state court clearly went on to reject the federal claim on the merits. As a result, the reference to state law in the state court's opinion is insufficient to demonstrate clearly whether the court intended to invoke waiver as an alternative ground.

11

*Id.* at 66 n.13.

This Court sees no appreciable difference between the ambiguity created by the Illinois Court in *Harris*, and that created by the Louisiana Supreme Court here. In sum, the Louisiana Supreme Court did not clearly and expressly rely on a state procedural bar to reject Petitioner's claim, but instead reached the merits. Thus, Petitioner's claim is not defaulted and may proceed.

The State's objection to claim 3D is overruled.

### C. Claim 14(C)

Claim 14(C) asserts that the trial court's reasonable doubt instruction minimized the State's burden of proof and deprived Petitioner of a fair trial. Like claim 3(D), the R&R recommends that this claim is defaulted because, again, the Louisiana Supreme Court's adjudication references Petitioner's failure to contemporaneously object. (Doc. 78 at 32-35). And again, Petitioner objects, arguing that the Louisiana Supreme Court reached the merits, thereby removing any state procedural bar. (Doc. 81 at 21-22).

Here, again, the Court agrees with Petitioner. Like its analysis of claim 3(D), the Louisiana Supreme Court's analysis of claim 14(C) is ambiguous. At the outset, the Supreme Court says "[a]s an initial matter, trial counsel failed to object to the instruction at the time the judge delivered it," and thus "failed to preserve the issue for review"; immediately thereafter, however, the Court explains that "[i]n any event, the court's instruction essentially mirrors that which appears in the *Louisiana Judges' Criminal Bench Book,* § 3.03, and does not, in fact, require a juror to articulate why a juror has a reasonable doubt." *Blank*, 955 So. 2d at 140.  Again, the

Louisiana Supreme Court's two-step analysis falls short of a "plain statement," thereby opening the door for federal review. *Harris*, 489 U.S. at 266 & n.13.

The State's objection to claim 14(C) is overruled.

### D. Claim 11(A)

Claim 11(A) asserts that two jurors in the venire—Jeanette Theriot and Wayne Eschete—should have been dismissed for cause because they revealed during voir dire questioning that they would impose the death penalty regardless of any mitigating circumstances. The R&R recommends that this claim is barred because the Louisiana Supreme Court's adjudication is supported by an adequate and independent state law ground—specifically, Petitioner's failure to exercise peremptory challenges to these two jurors when his cause challenges were rejected. (Doc. 78 at 35-37).

Petitioner objects, arguing that this claim survives because the Louisiana Supreme Court's adjudication "ruled on the state law component of [Petitioner's] claim" *only*, "not the federal law aspect." (Doc. 81 at 22). And because the Louisiana Supreme Court ignored Petitioner's federal claim that "empaneling … two automatic-death jurors violated his federal constitutional rights," "this claim is not procedurally defaulted," *and* entitled to *de novo* review. (*Id.* at 22).

Under the AEDPA, a federal court must presume that the state court adjudicated a habeas petitioner's federal claims on the merits. *Johnson v. Williams*, 568 U.S. 289, 293 (2013). That presumption, however, is rebuttable. *Id.* Factors to consider when determining whether the state court overlooked a federal claim include: whether the claim was clearly presented by the petitioner; whether the state

13

court acknowledged the federal claim; whether the state court referenced federal precedent in its opinion, or included state precedent that "fully incorporate[es] a related federal constitutional right," or, to the contrary, cited "state-law procedural principles" only; and, whether the federal claim is "substantial," such that it would obviously merit discussion. *See id.* at 298-300. If, based on these factors, the federal habeas petitioner clearly shows that the state court overlooked his federal claim, he is entitled to *de novo* review of *that* claim in federal court. *Id.* at 303 ("AEDPA permits *de novo* review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent. When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge.").

The Louisiana Constitution guarantees a capital defendant twelve peremptory challenges. La. Const. Art. I, § 17. The U.S. Constitution goes further, guaranteeing a capital defendant that *no* juror will be empaneled "who will automatically vote for the death penalty in every case." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

> [Such a juror] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. Indeed, because such a juror has already formed an opinion on the merits, the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror. Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains such views. If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence.

*Id.*

14

In his direct appeal to the Louisiana Supreme Court, Petitioner argued that each of these constitutional guarantees—state *and* federal—was violated:

> The trial court failed to grant Mr. Blank' s challenge for cause to six prospective jurors. In each case, the jurors expressed views that disqualified them under La. C.Cr.P. Art. 797. The defense was forced to use peremptory challenges to remove four of these jurors, implicating the right to exercise peremptory challenges. La. Const. Art. I, Sec, 17.1. When Mr. Blank prematurely exhausted his peremptory strikes, two of the obnoxious jurors were eventually empaneled in violation of Mr, Blank's federal due process rights. *Ross v. Oklahoma*, 487 U.S. 81 (1988); *Morgan v. Illinois*, 504 U.S. 719 (1992) ("Any juror who states that he or she will automatically vote for the death penalty without regard to the mitigating evidence is announcing an intention not to follow the instructions to consider the mitigating evidence and to decide if it is sufficient to preclude the imposition of the death penalty."); *State v. Robertson*, 630 So. 2d 1278, 1280-81, 1284 (La. 1994) ("a potential juror who indicates that he will not consider a life sentence and that he will automatically vote for the death penalty ... is subject to a challenge for cause").

(Doc. 13-2 at 324).

The Louisiana Supreme Court addressed Petitioner's *state* law claim only, explaining that to pursue a claim for lost peremptory challenges under La. Const. Art. I, § 17, a capital defendant "must use one of his peremptory challenges curatively to remove the [objectionable] juror, thus reducing his remaining peremptory challenges, or waive any complaint on appeal." *Blank*, 955 So. 2d at 113 (citing *State v. Connolly*, 96–1680, p. 8 (La.7/1/97), 700 So.2d 810, 818; *State v. Bourque*, 622 So.2d 198, 229–30 (La. 1993); *State v. Fallon*, 290 So.2d 273, 282 (La. 1974)). Petitioner's counsel failed to use peremptory challenges to remove jurors Theriot and Eschete, thus Petitioner waived his right to pursue his Louisiana law challenge on appeal. *Id.* at 114 ("Because he did not exercise an available peremptory challenge against Theriot, any erroneous ruling by the trial court did not deprive defendant of a

15

peremptory challenge; thus, defendant waived his right to assert this claim on appeal. *State v. Connolly*, *supra* at 818; *State v. Bourque*, *supra* at 229."); *id.* at 122 ("[J]ust like Theriot, because defense counsel failed to exercise one of its twelve available peremptory challenges against him, this claim is waived. *State v. Connolly*, *supra*.").

Thereafter, the Supreme Court ended its analysis of Petitioner's challenge to jurors Theriot and Eschete, without mentioning Petitioner's Fourteenth Amendment Due Process claim. The Supreme Court's failure to even acknowledge Petitioner's federal claim suggests that it was overlooked. *See Johnson*, 568 U.S. at 295-296 (state court "devoted several pages to discussing the propriety of the trial judge's decision to dismiss [a] juror," but "never expressly acknowledged that it was deciding a Sixth Amendment issue."). All additional evidence confirms the same—i.e., the Louisiana Supreme Court unintentionally skipped over Petitioner's federal claim, and adjudicated Petitioner's state law claim only.

First, Petitioner plainly and distinctly presented his federal claim in his brief to the Supreme Court, stating: "When Mr. Blank prematurely exhausted his peremptory strikes, two of the obnoxious jurors were eventually empaneled in violation of Mr, Blank's federal due process rights. *Ross v. Oklahoma*, 487 U.S. 81 (1988); *Morgan v. Illinois*, 504 U.S. 719 (1992)." (Doc. 13-2 at 324). This claim was *not* a "fleeting reference," nor was it "interchangeable" with his state law claim. *See Johnson*, 568 U.S. at 299 ("[A] state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim."); *cf. id.* at 306 ("Throughout her state proceedings,

16

[petitioner] treated her state and federal claims as interchangeable, and it is hardly surprising that the state courts did so as well.").

Second, the Louisiana precedent cited in the Supreme Court's ruling—*Connolly*, and *Bourque*—support a Louisiana law analysis only. *Cf. Johnson*, 568 U.S. at 298 ("[T]here are circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right."); *see Connolly*, 700 So. 2d at 818 (ruling that capital defendant waived his right to assert state law challenge to empaneled juror by failing to exercise a peremptory challenge, *and then* separately analyzing defendant's federal law challenge); *Bourque*, 622 So.2d at 229–30 (La. 1993) (analyzing capital defendant's state law challenges to empaneled jurors).

Third, the Supreme Court's ruling plainly rests "on state-law procedural principles." *Johnson*, 568 U.S. at 298 (quotation marks omitted).

And, finally, Petitioner's federal claim is obviously "substantial," and deserving of attention. *See id.* at 299 ("[T]here are instances in which a state court may simply regard a claim as too insubstantial to merit discussion."). Again, "[i]f even one [automatic-death] juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." *Morgan*, 504 U.S. at 729.

The Louisiana Supreme Court overlooked claim 11(A). The State's objection is overruled and Petitioner is entitled to *de novo* review of this claim.

### E. Claims 23, 27 and 28

Claim 23 challenges the legality of Louisiana's death penalty statute, arguing that it is unconstitutional because it fails to properly narrow the class of offenders eligible for the death penalty. Claim 27 asserts that Petitioner's death sentence

17

violates international human rights law and customary international law. Claim 28 argues that Petitioner's death sentence is unconstitutional because he is mentally ill. The R&R recommends that each of these claims be dismissed because they were not presented "to the Louisiana Supreme Court in a procedurally proper manner according to the Louisiana Supreme Court rules," and, thus, are not exhausted. (Doc. 78 at 29).

Petitioner objects, arguing that "he did properly brief these claims and, in any event, the procedural rule applied by the Louisiana Supreme Court was not strictly and regularly followed and therefore was inadequate to bar review." (Doc. 81 at 23).

As stated above, exhaustion requires merely that the petitioner "'fairly present' his claim in each appropriate state court … thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29. This may be accomplished "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* at 32. Here, Petitioner set forth claims 23, 27, and 28 in his post-conviction petition to the Louisiana Supreme Court as follows:

**ASSIGNMENT OF ERROR XV: THE DISTRICT COURT ERRED IN DENYING [THE FOLLOWING] CLAIMS, IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS**

The following claims were erroneously dismissed by the district court, in violation of [Petitioner's] rights under United States Supreme Court precedent and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution:

> …

- **[Claim 27]** *First Supplemental Application for Post-Conviction Relief … :* The Petitioner's Conviction and Death

Sentence Violate International Human Rights Law and Customary International Law

- **[Claim 28]** *First Supplemental Application for Post-Conviction Relief ... :* The Execution of a Mentally Ill, Brain Damaged Person Such as Mr. Blank Violates the Eighth Amendment to the United States Constitution; Article I, Section 20 of the Louisiana Constitution; and Principles of International Law

- **[Claim 23]** *First Supplemental Application for Post-Conviction Relief ... :* Louisiana's Death Penalty Statute Fails to Narrow the Class of Offenders Eligible for the Death Penalty and Results in Imposition of Death in a Capricious and Arbitrary Manner

This Court should reverse the district court's rulings on these claims because they conflict with the previous decisions of this Court and the Supreme Court of the United States, La.S.Ct. Rule X(a)(l); constitute an erroneous interpretation of the Constitution and laws of Louisiana, La.S.Ct. Rule X(a)(4); and represent a gross departure from proper judicial proceedings, La. S.Ct. Rule X(a)(5).

(Doc. 12-2 at 197-98). Each claim is plainly labeled "federal," and cites to "the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." The Louisiana Supreme Court was properly alerted to the federal nature of these claims; thus, they are exhausted. *Baldwin*, 541 U.S. at 29, 32.

The question that remains is whether these exhausted claims are nonetheless barred because they defaulted. On its face, the Louisiana Supreme Court's pithy analysis suggests that, indeed, these claims *are* defaulted because Petitioner failed to brief them consistent with Louisiana Supreme Court Rules:

And because [Petitioner] provides no supporting arguments for his remaining claims [including claims 23, 27, and 28], he has waived them. *See* La.S.Ct.R. X, § 4(3)(d) (requiring "argument of each assignment of error on the facts and the law...."); La.S.Ct.R. VII, § 6 (assignments of error made but not briefed considered abandoned); *State v. Bay*, 529 So.2d 845, 851 (La. 1988).

19

*State v. Blank*, 2016-0213 (La. 5/13/16), 192 So. 3d 93, 103. In a non-capital case, perhaps, Petitioner's failure to expansively brief these claims according to the Supreme Court's rules "may constitute an independent and adequate state ground barring [this Court's] review of a federal question." *Hathorn v. Lovorn*, 457 U.S. 255, 262 (1982). In capital cases, however, the Louisiana Supreme Court does *not* regularly follow its briefing rules:

> It has long been the general rule of this Court that in criminal cases assignments of error neither briefed nor argued are considered abandoned or waived. *See, e.g., State v. Kirkpatrick*, 443 So.2d 546 (La. 1983); *State v. Jones*, 340 So.2d 563 (La. 1976); *State v. Mills*, 229 La. 758, 86 So.2d 895 (1956); *State v. Hendon*, 170 La. 488, 128 So. 286 (1930). *See, also*, Rule 7, Section 6, Louisiana Supreme Court Rules. In death penalty cases, however, we apply an exception to the general rule and review, as a matter of policy, assignments of error even if unbriefed. *See, e.g., Kirkpatrick, supra*; *State v. Lowenfield*, 495 So.2d 1245 (La. 1985); *State v. Lindsey*, 404 So.2d 466 (La. 1981); *State v. Jones*, 332 So.2d 466 (La.1976).

*State v. Bay*, 529 So. 2d 845, 851 (La. 1988). As indicated by the various cases collected in Petitioner's opposition papers, the Supreme Court's "exception" to its briefing requirements remains the rule in capital cases. (*See* Doc. 70 at 52-53 (collecting cases)).

A state procedural ground is not "adequate" to foreclose federal review of a federal claim "unless the procedural rule is strictly or regularly followed." *Hathorn*, 457 U.S. at 262. By *its* own admission, the Louisiana Supreme Court does *not* strictly or regularly follow its briefing rules in capital cases. *Bay*, 529 So. 2d at 851. Thus, such rules cannot bar this Court from reviewing Petitioner's claims.

The State's objections to claims 23, 27, and 27 are overruled.

### F.  Certificate of Appealability

Based on the foregoing analysis, the State's various procedural objections have each been overruled, and Petitioner's claims may all proceed to the merits. In short, Petitioner has no need to appeal the Court's rulings on the State's procedural objections. In turn, there is no need to address the issue of whether to allow Petitioner a certificate of appealability regarding the same.

## IV.    CONCLUSION

Accordingly, having carefully considered the matter, the Court **APPROVES IN PART** the Magistrate Judge's Report and Recommendation (Doc. 78) and **ADOPTS** it as the Court's opinion regarding the State's objections to claims 1(A)(2), 16, 24, and 26. As to these claims, the State's objections are overruled for the reasons set forth in the Report and Recommendation.

In all other respects, and in the absence of any briefing from the State, the Court declines to adopt the remainder of the Magistrate Judge's Report and Recommendation. The State's objections to claims 3(D), 6, 11(A), 14(C), 23, 27 and 28 are overruled for the reasons set forth herein.

In sum,

**IT IS ORDERED** that the State's procedural objections (Docs. 30, 41)  be and are hereby **OVERRULED**.

**IT IS FURTHER ORDERED** that this matter be and is referred back to the

Magistrate Judge for further proceedings consistent with this Order.

Baton Rouge, Louisiana, this 14th day of September, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**