UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANIEL JOSEPH BLANK                                          CIVIL ACTION

VERSUS

DARREL VANNOY                                             NO. 16-00366-BAJ-RLB

## RULING AND ORDER

This is a death penalty case. Before the Court is the State's **Motion for Expedited Reconsideration** of the Court's October 22, 2025 Order. (Doc. 162). Petitioner opposes the Motion. (Doc. 163). For the following reasons, the State's Motion (Doc. 162) is **DENIED.**

The Order at issue—the Court's October 22, 2025 Order ("October 22, 2025 Order," Doc. 161)—accomplished the following: (1) set a hearing; and (2) required Counsel for the Louisiana State Police ("LSP") to be present at the hearing. (Doc. 161). Now, after a lengthy pattern of ignoring the Court's Orders, the State threatens that if this Court does not vacate its October 22, 2025 Order by October 31, 2025, then Respondent, and potentially LSP, "will be *forced* to seek mandamus relief from the [United States Court of Appeals for the] Fifth Circuit." (Doc. 162 at 1 (emphasis added)). Because the Court plainly has the authority to set a hearing and require attorneys to appear before it, the State's Motion is wholly without merit.

The procedural history of this case provides critical context for Respondent's 2025 request for reconsideration.

## A. Petitioner's Unopposed 2019 Discovery Motions and Court Order Granting Same.

Approximately six years ago, on October 7, 2019, Petitioner filed three discovery motions (the "2019 Discovery Motions"). The Court previously described the 2019 Discovery Motions as follows:

> The first, titled Motion To Conduct Habeas Rule 6 Discovery (Doc. 27, the "DNA Data Motion"), seeks an order directing the FBI to produce the "DNA profiles and raw data" generated from the bat used to murder Mr. Rossi, the fingernail scrapings collected from Mr. Arcuri, and the cigarette butts collected from the Millet crime scene. (*See* Doc. 27-2 at 1).
>
> The second, titled Motion For The Transfer Of Evidence To Defense Expert Bode Technology (Doc. 28, the "Physical Evidence Motion"), seeks an order directing the State to produce the actual (physical) Rossi murder weapon, Arcuri fingernails, and Millet cigarette butts, for DNA testing and analysis by Petitioner's DNA expert, Bode Technology. (*See* Doc. 28-3).
>
> The third, titled Motion To Transfer Respondent opposed only one of the three Motions, and that opposition Fingerprint Evidence For Defense Expert Evaluation (Doc. 29, the "Fingerprint Motion"), seeks an order directing the State to produce a subset of the fingerprint evidence collected from each of the various crime scenes for examination and analysis by Petitioner's fingerprint expert, Max L. Jarrell. (Doc. 29-3).

(Doc. 101 at 5–6).

As the Court has previously emphasized: "The State offered ***no opposition whatsoever*** to the Physical Evidence Motion *or* the Fingerprint Motion[,]" and "[t]he State filed an ***untimely and perfunctory*** (two-page) opposition to the DNA Data Motion. (Doc. 43)." (Doc. 101 at 5–6 (emphasis added)).

Although Respondent failed to oppose the 2019 Discovery Motions, the Magistrate Judge denied Petitioner's request for discovery. (Doc. 79). Petitioner

2

timely moved the Court to review the Magistrate Judge's Order denying the requested discovery. (Doc. 82). Respondent again ***failed to oppose*** Petitioner's Motion for Review of Magistrate Judge's Order.

On September 13, 2021, after full consideration of the arguments, the Court granted Petitioner's Motion for Review of Magistrate Judge's Order. (Doc. 101). The Court also granted Petitioner's 2019 Discovery Motions and ordered the State to produce and transfer certain items on or before September 27, 2021. (*Id.* at 16–20).

The State did not move for reconsideration of the Court's Order.

### B. Petitioner's Unopposed September 16, 2021 Motion to Amend Discovery Order and Court Order Granting Same.

On September 16, 2021, Petitioner moved to amend the Court's September 13, 2021 Order, asking the Court to order the transfer of the evidence at issue to a different expert because Petitioner's expert had passed away. (Doc. 103). Respondent ***did not oppose*** Petitioner's Motion. Also on September 16, 2021, the Court granted Petitioner's Motion to Amend Discovery Order. (Doc. 104). In doing so, the Court provided the State until September 30, 2021, to produce and transfer the evidence at issue. (*Id.*).

The State did not move for reconsideration of the Court's Order.

### C. Respondent's Notices of Compliance with the Court's Order Granting 2019 Discovery Motions.

On September 27, and 30, 2021, Respondent filed two Notices of Compliance, stating that each entity in possession of the evidence at issue complied with the Court's Order by producing and transferring the evidence at issue as the Court

3

ordered. (Doc. 105; Doc. 106). As exhibits to the Notices of Compliance, Respondent attached September 17, 2021 letters from Louisiana Assistant District Attorney Donald D. Candell to the following entities: (1) LSP Crime Lab; (2) Ascension Parish Clerk of Court; (3) St. John the Baptist Sheriff's Office; (4) Ascension Parish Sheriff's Office; and (5) Gonzales Police Department. (Doc. 105 at 3–5; Doc. 106 at 3–6). The September 17, 2021 letters are written on letterhead for the State of Louisiana, District Attorney's Office for the 23rd Judicial District of Louisiana. (*Id.*).

Critical here, the letters direct each entity, including LSP Crime Lab, as follows: "[P]lease be advised that pursuant to Order of Judge Brian A. Jackson, US District Court, Middle District of Louisiana, ***you are tasked with*** the submission of any and all items [described in] the attached ruling and order." (*Id.* (emphasis added)). The letters then provide instructions on where each entity must direct the evidence at issue. (*Id.*). Finally, the letters provide: "Upon ***submission by you of the evidence required***, please notify this office immediately so that we may ***inform the court of the State's compliance with the Court's order***." (*Id.* (emphasis added)).

To be clear, the letter to the LSP Crime Lab provided:

4



**RICKY L. BABIN**
DISTRICT ATTORNEY
23ᴿᴰ JUDICIAL DISTRICT OF LOUISIANA



P.O. Drawer 1899
Gonzales, LA 70707
Telephone: 225-644-3333
Facsimile: 225-644-1535

Louisiana State Police Crime Lab
Attn: Latent prints division
376 E Airport Ave
Baton Rouge. LA 70806

Re: Daniel Joseph Blank v Gerald Vannoy  16-00366-BAJ-RLB

September 17, 2021

Confirming our telephone conversation, please be advised that pursuant to Order of Judge Brian A. Jackson, US District Court, Middle District of Louisiana, you are tasked with the submission of any and all items listed on page 18 of the attached ruling and order.

Same should be forwarded to Ron Smith & Associates, attention Lauren Smith, 9335 Highway 19 North, Collinsville, Mississippi 39325 on or before September 30, 2021. Upon submission by you of the evidence required, please notify this office immediately so that we may inform the court of the State's compliance with the Court's order. If you have any questions, please contact me at (225) 644-3333.

Sincerely,

*[signature]*

Donald D. Candell
Assistant District Attorney

(Doc. 106 at 6).

Respondent also attached e-mails, letters, and FedEx receipts from each respective agency as additional exhibits to the Notices of Compliance, which confirm that the agencies either shipped the evidence at issue to the proper party pursuant to the Court's Order, or conducted a search of their files and determined that the

evidence at issue had already been returned to another agency, such that that agency no longer had access to the evidence. (Doc. 105 at 6–12; Doc. 106 at 7–13).

### D. Petitioner's Unopposed September 7, 2022 Motion to Amend Discovery Order and Court Order Granting Same.

On September 7, 2022, Petitioner moved the Court to order that a qualified LSP Crime Lab technician must perform searches of 29 relevant prints identified by Petitioner's Counsel in the manual Integrated Automated Fingerprint Identification System ("IAFIS") in the presence of Petitioner's expert witness. (Doc. 120 at 3).

Petitioner's Motion indicated that since his expert received the evidence at issue, Petitioner's expert microscopically evaluated dozens of fingerprints to identify which were of sufficient quality for entry into IAFIS. (*Id.* at 2). Petitioner's expert determined that 29 fingerprints and/or palmprints, less than 10% of the total prints collected from crime scenes in this case, were sufficient for comparison to prints in the IAFIS system. (*Id.*). Petitioner represented:

> "[The LSP Crime Lab] previously compared the 29 prints to [Petitioner's] prints and determined that he was *excluded* as the contributor of the prints."

(*Id.* (emphasis added)). Petitioner's expert thus sought to determine whose fingerprints were left at the crime scenes. (*Id.*).

LSP indicated that Petitioner's expert could not access IAFIS because she was not a member of law enforcement. (*Id.*). LSP Crime Lab further indicated that the dissemination of information obtained from IAFIS/Next Generation Identification ("NGI") is limited to agencies "where such disclosures may promote, assist, or otherwise serve law enforcement" interests. (*Id.*). Based on these roadblocks,

6

Petitioner asked the Court to order a qualified LSP Crime Lab technician to conduct the search instead of Petitioner's expert. (*Id.* at 3).

The State ***failed to oppose*** Petitioner's Motion. (Doc. 120).

On November 30, 2022, the Court granted Petitioner's unopposed Motion and ordered that a qualified LSP Crime Lab technician, in the presence of Petitioner's expert, shall perform the manual IAFIS/NGI searches of 29 relevant fingerprints and/or palmprints identified by Counsel for Petitioner as described in Petitioner's Motion. (Doc. 121).

The State did not move for reconsideration of the Court's Order.

### E. Petitioner's Unopposed March 20, 2023 Motion to Compel and Court Order Granting Same.

Four months later, on March 20, 2023, Petitioner moved the Court to compel the State to comply with the Court's November 30, 2022 Order requiring LSP Crime Lab to perform the manual IAFIS/NGI searches of 29 relevant fingerprints and palmprints Petitioner's Counsel identified. (Doc. 122). Apparently, LSP refused to comply with the Court's November 30, 2022 Order unless Petitioner released LSP Crime Lab from any liability should a search of IAFIS reveal the source of the prints. (*Id.* at 1). Petitioner signed such a waiver on his own volition, although it was not required by the Court's Order. (Doc. 123-1).

The State, yet again, ***failed to oppose*** Petitioner's Motion to Compel.

On December 13, 2023, the Court granted Petitioner's Motion to Compel, emphasizing: "Incredibly, despite having refused to submit to the Court's November 30 Order, the State offers *no response* to Petitioner's motion to compel, *or*

7

his 'Statement Of Waiver Of Liability.'" (Doc. 125 at 2). The Court stated: "Absent any response or objection, ***it is incomprehensible that the State would flout this Court's November 30 Order*** requiring IAFIS/NGI searches of the 29 potentially exculpatory prints *in the presence of* [Petitioner's expert.]" (*Id.* (emphasis added)).

Thus, the Court again ordered the State to comply with its November 30, 2022 Order, without additional preconditions to compliance, by December 23, 2023. (*Id.* at 3). The Court further ordered that "upon satisfactory completion of the required the IAFIS/NGI searches of the 29 potentially exculpatory prints, the State shall immediately file written notice of the same." (*Id.*). The Court emphatically ordered that "**[t]he terms of this Order and *all* Orders of this Court will be enforced through civil contempt proceedings, as necessary.**" (*Id.*).

The State did not move for reconsideration of the Court's Order.

### F. The Court's August 23, 2024 Order Addressing the State's Noncompliance with Court Order.

On August 23, 2024, the Court ordered a status conference to discuss the status of the State's compliance with its November 30, 2022 and December 13, 2023 Orders. (Doc. 126). The Court emphasized: "On December 13, 2023, [] [t]he Court ordered [] that the State 'immediately file written notice' of the satisfactory completion of the required IAFIS/NGI searches of the 29 potentially exculpatory prints, and ordered that such searches were to be completed" by December 23, 2023. (*Id.*). The Court further noted: "To date, [as of August 23, 2024,] no written notice has been filed." (*Id.*). Thus, the Court set a status conference to ascertain the status of discovery.

Following the status conference, the Court ordered Petitioner to provide

8

results of the fingerprint cross-comparisons to Respondent and ordered the parties to submit a proposed scheduling order. (Doc. 128).

### G. Petitioner's November 13, 2024 Unopposed Motions to Compel and Court Orders Granting Same.

On November 13, 2024, Petitioner filed two Motions to Compel. (Doc. 137; Doc. 138). One Motion to Compel asked the Court to order LSP Crime Lab to perform a DNA database search of the Combined DNA Index System ("CODIS"), including the National DNA Indexing System ("NDIS"), State DNA Indexing System ("SDIS"), and any local indexing system, to compare the two partial DNA profiles obtained by the FBI from the cigarette butts collected at the Millet crime scene against the DNA profiles contained in those databases. (Doc. 137 at 1).

The State *failed to oppose* Petitioner's Motion to Compel.

Petitioner's second Motion to Compel asked the Court to order the State to transfer the original DNA samples taken by crime scene investigators from the Rossi murder weapon and stored in vials at the Ascension Parish Sheriff's Office to the Serological Research Institute ("SERI") for testing. (Doc. 138). Petitioner argued that SERI is an accredited DNA lab capable of testing the DNA samples with the most advanced technology. (*Id.*). Petitioner further asserted that SERI had a current agreement with a law enforcement agency to conduct CODIS searches to compare the DNA profiles at issue. (*Id.* at 2).

The State, again, *failed to oppose* Petitioner's Motion.

The Court granted Petitioner's *unopposed* Motions to Compel, and ordered the following:

9

> [O]n or before July 7, 2025, the State shall cause the transfer from the Ascension Parish Sheriff's Office to the Serological Research Institute (SERI) the sealed evidence bag containing, *inter alia*, (1) Victor Rossi's known sample, marked as K1 (or any variation reflecting concentration or dilution, including "K1 1:10," "K-1 1:100"); (2) the sample from the baseball bat, marked as Q5 (including Q5 1:10 and Q5 1:100); and (3) any negative or control samples.

(Doc. 141 at 1). The Court also ordered:

> [T]he Louisiana State Police (LSP) Crime Laboratory shall perform a DNA database search (i.e., a full search, a keyboard search, and/or an emergency upload and request search) of the Combined DNA Index System ("CODIS"), including the National DNA Indexing System ("NDIS"), State DNA Indexing System ("SDIS"), and any local indexing system, to compare the two partial DNA profiles (one male, one female) obtained by the FBI from the cigarette butts collected at the Millet crime scene against DNA profiles contained in those databases[.]

(Doc. 142). The Court further ordered that:

> [S]hould the LSP receive any "candidate matches," "partial matches," or "hits" from CODIS/NDIS/SDIS, it shall promptly carry out its confirmation procedures, as set forth in the NDIS Guidelines, to determine whether there is a "confirmed match" and release this information to the parties.

(*Id.*).

The State did not move for reconsideration of the Court's Order.

### H. Respondent's July 2, 2025 Motion to "Clarify" and Court's Order Denying Same.

At 6:30 P.M. on July 2, 2025, one business day before the Court's July 7, 2025 deadline to transfer certain evidence and conduct certain searches, and after the expiration of the time window in which the State could have moved the Court to reconsider its June 4, 2025 Orders, Respondent moved to "clarify" the Court's June 4, 2025 Orders. (Doc. 146). The Court denied Respondent's Motion, finding it

10

both procedurally improper and wholly without merit. (Doc. 147). The Court again emphasized:

> The Court notes this is part of a pattern of delay by the State, and the LSP in particular, having already been threatened with sanctions by the Court in connection with its delays related to the same evidence. (Doc. 125). The Court considers this baseless Motion—filed just before the expiration of the July 7th discovery-related deadline and just before the July 4th Holiday—as yet another attempt at delaying execution of the Court's discovery Orders. This type of gamesmanship is unacceptable, especially given the nature of these proceedings and what is at stake for Blank. Counsel for Vannoy and the State are advised that these delay tactics will not be tolerated going forward and that sanctions will be considered should a pattern of contumacious conduct ensue.

(*Id.* at 4 n.1).

### I. Court's September 25, 2025 Order Requiring Joint Status Report.

On September 25, 2025, after hearing nothing further from Respondent, and with no similar Notice of Compliance filed into the record, the Court ordered the parties to file a Joint Status Report within 14 days of the issuance of the Order. The Court emphasized that by September 25, 2025, which was 113 days after the Court's June 4, 2025 Order, and 80 days after the Court-ordered July 7, 2025 deadline, "[f]orensic testing and database searches should be well underway, if not complete." (Doc. 157). Thus, the Court ordered that the Joint Status Report detail the following:

- The joint Status Report should provide detailed information updating the Court on the status and any results of the "forensic testing or analysis as granted by the Court" in its two discovery Orders (Docs. 141, 142) issued on June 4, 2025. (Doc. 143 at 1).

- If Petitioner's "forensic testing or analysis" has been completed (Doc. 143 at 1), the parties should indicate, for all tested evidence, both the results of testing and the date of completion.

11

- If the Louisiana State Police Crime Laboratory's DNA database searches have been completed (Doc. 142), the parties should indicate both the results and date the parties were informed of those results.

- If the Louisiana State Police Crime Laboratory has not completed its DNA database searches (Doc. 142), Respondent will provide a detailed update from the LSP on the status of those searches and an anticipated date of completion.

- Respondent should also explain whether he has begun (or intends to begin) any forensic testing of his own (Doc. 143 at 1) and provide the Court with an anticipated timeframe in which to complete that testing.

(Doc. 157).

### J. Parties' October 8, 2025 Joint Status Report.

In the parties' Joint Status Report, Respondent, incredibly, indicated that it had "***no update***" regarding the Court-Ordered discovery because Respondent "assumed" that Petitioner's Counsel would coordinate testing with LSP. (Doc. 159 at 5). Respondent further represented that it was only the Court's Order "directing the parties to provide a status [that] brought this glaring miscommunication to the forefront." (*Id.*).

After reviewing the parties' Joint Status Report, the Court determined that a hearing was appropriate. Thus, the Court issued its October 22, 2025 Order setting a hearing, requiring LSP's Counsel to be present at the hearing, requiring the State to serve LSP's Counsel and the LSP Crime Lab Director with the Court's Order, and requiring the State to file notice of same to avoid any "further assumptions as to who is responsible for informing the LSP and its counsel, Faye Morrison, of this Order." (Doc. 161).

12

Now, Respondent appears to threaten the Court, arguing that if the Court does not vacate its October 22, 2025 Order by October 31, 2025, then Respondent will be "***forced***" to seek a writ of mandamus before the Fifth Circuit. (Doc. 162).

Respondent strays into a procedural no-man's land—the same Respondent who failed to oppose Petitioner's ***seven*** discovery motions over a five-year period. (Doc. 27 (dated October 7, 2019); Doc. 28; Doc. 29; Doc. 103; Doc. 120; Doc. 122; Doc. 137; Doc. 138 (dated November 13, 2024)). In fact, the ***one*** time Respondent did respond to a discovery Motion, his Opposition was untimely and perfunctory (two pages). (Doc. 43).

The Court has issued ***eight*** Orders granting Petitioner's unopposed discovery motions and governing the scope of discovery over four years. (Doc. 101 (dated September 13, 2021); Doc. 104; Doc. 121; Doc. 125; Doc. 126; Doc. 128; Doc. 141; Doc. 142 (dated June 4, 2025)). Respondent failed to timely move to reconsider any of the Court's eight discovery Orders. Without a proper procedural avenue before him, Respondent filed an untimely Motion to "Clarify," which the Court flatly rejected. (Doc. 146; Doc. 147).

Now, Respondent threatens to seek a writ of mandamus to the Fifth Circuit, asking the Circuit to overturn the Court's October 22, 2025 Order, which merely sets a hearing. (Doc. 161; Doc. 162). The October 22, 2025 Order does not order additional discovery. (Doc. 161). The October 22, 2025 Order does not require the State to do anything other than appear at a hearing, serve the Court's Order on LSP, and file notice of service into the record. (*Id.*). The State's delay tactics are nothing short of

13

astounding, and a direct repudiation of a Federal Court Order, particularly when the Court has already emphasized:

- "**The terms of this Order and *all* Orders of this Court will be enforced through civil contempt proceedings, as necessary.**" (Doc. 125 at 3, December 13, 2023 Order).

- "Absent any response or objection, *it is incomprehensible that the State would flout this Court's November 30 Order* requiring IAFIS/NGI searches of the 29 potentially exculpatory prints *in the presence of* [Petitioner's expert.]" (Doc. 125 at 2 (emphasis added), December 13, 2023 Order).

- "On December 13, 2023, [] [t]he Court ordered [] that the State 'immediately file written notice' of the satisfactory completion of the required IAFIS/NGI searches of the 29 potentially exculpatory prints, and ordered that such searches were to be completed" by December 23, 2023. [] To date, [as of August 23, 2024,] no written notice has been filed." (Doc. 126, August 23, 2024 Order).

- "The Court notes this is part of a pattern of delay by the State, and the LSP in particular, having already been threatened with sanctions by the Court in connection with its delays related to the same evidence. (Doc. 125). The Court considers this baseless Motion—filed just before the expiration of the July 7th discovery-related deadline and just before the July 4th Holiday—as

yet another attempt at delaying execution of the Court's discovery Orders. This type of gamesmanship is unacceptable, especially given the nature of these proceedings and what is at stake for Blank. Counsel for Vannoy and the State are advised that these delay tactics will not be tolerated going forward and that sanctions will be considered should a pattern of contumacious conduct ensue." (Doc. 147 at 4 n.1, July 9, 2025 Order).

### K. The Law.

It bears repeating that this is a death penalty case. Petitioner's life is at stake. The victims' families deserve closure. The Court has twice informed the State that it would hold it in contempt of Court if it continued with its pattern of conduct. What's more, the Order to which the State takes offense does not grant any relief to Petitioner, nor does it make any ruling adverse to the State. Instead, it does nothing more than set a hearing. Nonetheless, the State now threatens to pursue a writ of mandamus if the Court fails to vacate its October 22, 2025 Order.

This Court has the authority to require Ms. Morrison, LSP's counsel, to appear at the hearing to further explain LSP's continued failure to assist the State in complying with the Court's discovery Orders. The All Writs Act, 28 U.S.C. § 1651, provides that any court established by an "Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Because of this Act, federal courts may "issu[e] orders appropriate to assist them in conducting factual inquiries," and that authority

15

"extend[s] to habeas corpus proceedings." *Harris v. Nelson*, 394 U.S. 286, 299–300 (1969).

Relevant here, the "power of the Act extends" to persons or entities not technically named as parties, but who "are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (district court had authority to compel nonparty phone company to assist the FBI's implementation of a pen register and noting: "[Under] the facts of this case, we do not think that the Company was a third party so far removed from the underlying controversy that its assistance could not be permissibly compelled.").

And again, it matters not that LSP is a state agency that may otherwise be entitled to Eleventh Amendment Immunity. The State confuses this habeas proceeding with traditional civil litigation.[1] Here, the Court has issued Orders compelling Respondent, the Warden of Angola, to comply with discovery. But as the Supreme Court has long recognized, the AEDPA's requirement that a warden act as respondent in a habeas proceeding is itself a legal fiction; the warden has no personal knowledge of the underlying facts. *Harris v. Nelson*, 394 U.S. 286, 296 (1969)

---

[1] The Court was aware of the Fifth Circuit's holding in *Russell v. Jones*, 49 F.4th 507, 515 (5th Cir. 2022) when it stated that "the Eleventh Amendment does not shield the Louisiana State Police from *assisting* the *Respondent* in complying with the discovery ordered by the Court in this habeas proceeding . . . ." (Doc. 161 at 3 n.5) (emphasis added). Unlike the present case, *Russell* involved Rule 45 subpoenas to "Felony Judges" who had previously been dismissed as defendants on grounds of sovereign immunity. *Russell*, 49 F.4th at 515 ("Plaintiffs may not obtain by third-party subpoena what they could not obtain from the Felony Judges as defendants."). *Russell*, while exhaustive and well-written, presented a distinct set of facts and issues.

16

("Rule 33 . . . provides for written interrogatories to be served by any party upon any 'adverse party.' As the present case illustrates, this would usually mean that the prisoner's interrogatories must be directed to the warden although the warden would be unable to answer from personal knowledge questions relating to petitioner's arrest and trial."). And so, responding to discovery in habeas proceedings necessarily requires the assistance of closely-related state entities who are not the respondent—*i.e.*, those with personal knowledge of the underlying facts, or possession, custody or control of the records.[2]

For that reason, "literal application" of civil discovery rules to "habeas corpus proceedings would do violence to the efficient and effective administration of the Great Writ." *Harris*, 394 U.S. at 297. Instead, courts "may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage." *Id.* (finding authority under the All Writs Act). Indeed, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry," when discovery is allowed. *Bracy v. Gramley*, 520 U.S. 899, 909 (1997). What those facilities and procedures may be are left to the court's discretion under Rule 6(a).[3]

---

[2] Again, discovery has been requested from Respondent and the Court has granted discovery Motions directed at Respondent. Discovery requests, including Rule 45 subpoenas, have never been served on LSP, and LSP has never been ordered to directly comply with discovery. Instead, the Court's Orders have required its assistance and participation, which is necessary for Respondent to provide the discovery ordered by the Court. The State's counsel fails to recognize this distinction. *See Harris*, 394 U.S. at 296 ("Presumably the warden could solicit answers from the appropriate officials and reply 'under oath,' as the rule requires; but the warden is clearly not the kind of 'adversary party' contemplated by the discovery rules, and the result of their literal application would be to invoke a procedure which is circuitous, burdensome, and time consuming.").

[3] In 1976, Congress adopted the Rules Governing § 2254 Cases. The Advisory Committee

17

Exercising this discretion, federal courts have often required state agencies or officials—police departments, prosecutors, crime labs—to provide information or otherwise assist the respondent in complying with discovery orders in habeas proceedings. *See Cherrix v. Braxton*, 131 F. Supp. 2d 756, 777 (E.D. Va. 2001) ("[T]he proper individuals to whom this Court should look to provide the information Cherrix needs to develop his habeas petition are the Attorney General and the Clerk of the trial court, who are the equivalents to 'parties' to this suit under the common notions of who constitutes a party for discovery purposes."); *Hall v. Davis*, 2022 WL 16574136, at *3 (D. Idaho Nov. 1, 2022) (ordering state agencies and custodians of evidence to preserve all evidence in their possession and cooperate with petitioner's investigation and noting "death penalty cases are different from regular civil cases in that third-party law enforcement agencies generally function as decades-long custodians of critical evidence upon which the defendant's life or death may turn."); *Clark v. Schweitzer*, 2020 WL 6823118, at *2 (S.D. Ohio Nov. 19, 2020) (rejecting warden's objections that he could not answer discovery because he lacked personal knowledge, as well as custody or control of requested records, and finding a Rule 45 subpoena was "not required" to obtain information from "[t]he police, prosecutors and Attorney General's Office (the entities with custody and control over the requested discovery)," who were ordered to "work with" respondent to answer discovery); *Hill v. Mitchell*, 2007 WL 2874597, at *7–8 (S.D. Ohio Sept. 27, 2007) (granting petitioner's

---

Notes to Rule 6 point out that the rule "contains very little specificity as to what types and methods of discovery should be made available to the parties." Rather, district court judges are allowed to "fashion their own rules in the context of individual cases."

18

motion to compel discovery, including deposing attorneys within the Hamilton County prosecutor's office regarding its "policies, procedures, and guidelines regarding who should be charged with capital murder"); *Warden, Kentucky State Penitentiary v. Gall*, 865 F.2d 786, 788 (6th Cir. 1989) (district court did not abuse discretion in granting capital habeas petitioner's discovery motion and ordering Kentucky State Police Crime Lab to provide petitioner with hair samples and microscope slides for "examination by petitioner's experts, with appropriate safeguards."); *Jenkins v. Scully*, 1992 WL 32342, at *1 (W.D.N.Y. Feb. 11, 1992) (granting capital habeas petitioner's discovery motion for "an order directing the Erie County District Attorney (not a party to the instant proceeding) to produce the hair samples in question so that they can be subjected to DNA fingerprinting tests at an appropriate facility."). Because these state entities—police departments, crime labs, district attorney's offices, attorney general's offices, and clerks of court—are the ones with personal knowledge of the criminal proceedings, or actually have possession, custody or control of the records, they are "the equivalents to 'parties'" in habeas suits "under the common notions of who constitutes a party for discovery purposes." *Cherrix*, 131 F. Supp. 2d at 777.

      Accordingly,

motion to compel discovery, including deposing attorneys within the Hamilton County prosecutor's office regarding its "policies, procedures, and guidelines regarding who should be charged with capital murder"); *Warden, Kentucky State Penitentiary v. Gall*, 865 F.2d 786, 788 (6th Cir. 1989) (district court did not abuse discretion in granting capital habeas petitioner's discovery motion and ordering Kentucky State Police Crime Lab to provide petitioner with hair samples and microscope slides for "examination by petitioner's experts, with appropriate safeguards."); *Jenkins v. Scully*, 1992 WL 32342, at *1 (W.D.N.Y. Feb. 11, 1992) (granting capital habeas petitioner's discovery motion for "an order directing the Erie County District Attorney (not a party to the instant proceeding) to produce the hair samples in question so that they can be subjected to DNA fingerprinting tests at an appropriate facility."). Because these state entities—police departments, crime labs, district attorney's offices, attorney general's offices, and clerks of court—are the ones with personal knowledge of the criminal proceedings, or actually have possession, custody or control of the records, they are "the equivalents to 'parties'" in habeas suits "under the common notions of who constitutes a party for discovery purposes." *Cherrix*, 131 F. Supp. 2d at 777.

    Accordingly,

**IT IS ORDERED** that Respondent's **Motion for Expedited Reconsideration (Doc. 162)** is **DENIED.**

Baton Rouge, Louisiana, this 31st day of October, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**